**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CITADEL WAFORD DISPOSAL | ) | Case No. 15-11323 (KJC) |
| PARTNERS, L.P. *et al.,* [1] | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |
|  | ) |  |
| OFFICIAL COMMITTEE OF | ) |  |
| UNSECURED CREDITORS OF CITADEL | ) |  |
| WATFORD DISPOSAL PARTNERS, L.P., | ) |  |
| *et al.,* | ) |  |
|  | ) | Adv. Pro. No. 17-50024 (KJC) |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| CITADEL ENERGY PARTNERS, LLC, a | ) |  |
| Wyoming limited liability company; FORT | ) |  |
| BERTHOLD WATER PARTNERS, L.P., a | ) |  |
| Delaware limited partnership; STANTON | ) |  |
| DODSON, an individual; NICOLAS J. | ) |  |
| VANDERWEY, an individual; LOUIS | ) |  |
| BRIDGES, an individual; PETER SIMONS, | ) |  |
| an individual; NICHOLAS TEMPLE, an | ) |  |
| individual; ERIC HOLOMAN, an | ) |  |
| individual; ALASTAIR SMITH, an | ) |  |
| individual; CARL COWARD, an | ) |  |
| individual; NORTH DAKOTA WATER | ) |  |
| PARTNERS, LLC, a Delaware limited | ) |  |
| liability company; JONATHAN P. | ) |  |
| REUBEN, C.P.A., a California accountancy | ) |  |
| corporation; and DOES 1 through 100, | ) |  |
| inclusive, | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Citadel Energy Services, LLC (7762); Pembroke Fields, LLC (0341); Citadel Energy SWD Holdings, LLC (5266) and Citadel Watford City Disposal Partners, LP (1520).  The address for each Debtor is PO Box 2127, Watford City, North Dakota 58854.

## **OPENING BRIEF**

MACAULEY LLC
Thomas G. Macauley (No. 3411)
300 Delaware Avenue, Suite 760
Wilmington, DE 19801
Telephone:  (302) 656-0100
Facsimile:   (302) 656-5886

Attorneys for Defendants Alstair Smith,
Carl Coward, and North Dakota Water
Partners, LLC

Dated:  May 16, 2017

# TABLE OF CONTENTS

Page

Nature and Stage of Proceeding.................................................................................. 1

Summary of Argument ................................................................................................ 2

Statement of Facts...................................................................................................... 3

Argument. .................................................................................................................. 5

I. Motion To Dismiss. ................................................................................................ 5

    A. The Dahl Lease Was Not Transferred. ........................................................... 5

    B. The Complaint Fails To Plead Any Other Acts Against the C&S Defendants ............ 6

    C. The C&S Defendants Owed No Fiduciary Duty as a General Partner.. ....................... 7

    D. The Accounting Cause of Action Cannot Stand on Its Own. ....................................... 7

II. Motion for Costs and Stay....................................................................................... 8

    A. The Court Should Grant Costs, Including Attorney's Fees............................................ 8

    B. The Court Should Stay This Proceeding. .................................................................... 10

III. Motion To Set Aside Defaults and To Deem Response to Complaint Timely.................. 11

IV. Adoption of Other Arguments. ............................................................................... 12

V. Conclusion. .......................................................................................................... 12

# TABLE OF AUTHORITIES

Page

Addy v. Piedmonte,
  2009 WL 707641 (Del. Ch. Mar. 18, 2009)...................................................................7

Aloha Airlines, Inc. v. Mesa Air Group, Inc.,
  No. 07 Civ. 7, 2007 WL 2320672 (D. Haw. Aug. 10, 2007)............................................9

Blauinsel Stiftung v. Sumitomo Corp.,
  No. 99 Civ. 1108, 2001 WL 1602118 (S.D.N.Y. Dec. 14, 2001)....................................8-9

Cadle Co. v. Beury,
  242 F.R.D. 695 (S.D. Ga. 2007) ...................................................................................10

Esquivel v. Arau,
  913 F. Supp. 1382 (C.D. Cal. 1996) ...........................................................................9-10

Huntley, L.L.C. v. Monterey Mushrooms, Inc.,
  No. 08 Civ. 377, 2009 WL 2992553 (D. Del. Sept. 18, 2009) .........................................9

In re Jevic Holding Corp.,
  2011 WL 4345204 (Bankr. D. Del. Sept. 15, 2011) ........................................................6

In re Network Access Solutions Corp.,
  330 B.R. 67 (Bankr. D. Del. 2005)................................................................................5

In re Superior Crewboats, Inc.,
  374 F.3d 330 (5th Cir. 2004) .......................................................................................5

Katen v. Katen,
  No. 97 Civ. 275, 1998 WL 721092 (E.D.N.C. Mar. 4, 1998) .........................................10

Kent v. Bank of Am., N.A.,
  518 Fed. App'x 514 (8th Cir. 2013) ..............................................................................9

Meredith v. Sovall,
  216 F.3d 1087 (Table), 2000 WL 807355 (10th Cir. June 23, 2000) .................................9

Medunic v. Lederer,
  533 F.2d 891 (3d Cir. 1976).......................................................................................11

Microsoft Corp. v. WebXchange Inc.,
  715 F. Supp. 2d 598 (D. Del. 2010)...............................................................................9

*Nacco Indus. v. Applica Inc.,*
   997 A.2d 1 (Del. Ch. 2009)..................................................................................9

*Quality Data Systems, Inc. v. Fin. Bus. Equip. Solutions, Inc.,*
   No. 08 Civ. 61790, 2009 WL 1393352 (S.D. Fla. May 18, 2009) ....................................6

*Stevanov v. O'Connor,*
   No. Civ. 3820, 2009 WL 1059640 (Del. Ch. Apr. 21, 2009) ...........................................7

*United States ex rel. Shaver v. Lucas W. Corp.,*
   237 F.3d 932 (8th Cir. 2001) ...........................................................................11

*Van v. Language Line Servs., Inc.,*
   No. 14 Civ. 3791, 2015 WL 225451 (N.D. Cal. Jan 16, 2015) ........................................10

*Whitehead v. Miller Brewing Co.,*
   126 F.R.D. 581 (M.D. Ga. 1989).........................................................................9

*World Athletic Sports Corp. v. Pahlavi,*
   267 F. Supp. 160 (S.D.N.Y. 1966)...................................................................10-11

*Young v. Dole,*
   No. 90 Civ. 2667, 1991 WL 158977 (E.D.N.Y. July 11, 1991) .......................................8

Other Authorities

Fed. R. Bankr. P. 7012-2..................................................................................12

Fed. R. Civ. P. 41(d) ..................................................................................8-11

Fed. R. Civ. P. 54(d) ...................................................................................10

Fed. R. Civ. P. 55(c) ...................................................................................11

## Nature and Stage of the Proceeding

On February 6, 2017, the Official Committee of Unsecured Creditors (the "Committee") commenced this adversary proceeding. The Complaint closely resembles a derivative complaint filed in California state court that was voluntarily dismissed as to the defendants Carl Coward, Alastair Smith and North Dakota Water Partners, LLC ("ND Water," and together with Messrs. Coward and Smith, the "C&S Defendants").

Committee counsel agreed to extensions of the deadline for the C&S Defendants to respond to the Complaint first to May 1 and then to May 16, 2017. The parties have not yet agreed on a form of stipulation to document the extension because Committee counsel has insisted on the inclusion of a provision that addresses this Court's authority over this proceeding.

Apparently, no agreement on the form of stipulation is forthcoming because, on May 5, 2017 -- without notice to undersigned counsel -- the Committee requested that the clerk enter notice of default against the C&S Defendants. The clerk entered defaults against the C&S Defendants on May 8, 2017.

This opening brief, dated May 16, 2017, supports the C&S Defendants' motion to dismiss the Complaint. It also supports the C&S Defendants' motions (a) for costs incurred in the action filed in California state court (the "State Court Action") and a stay of this proceeding until those costs are paid and (b) to set aside the defaults and to treat the C&S Defendants' response to the Complaint as timely.

1

## Summary of Argument

1.      Counts 1-3, 6-7 and 13 of the Complaint should be dismissed because the "Dahl Lease" (as defined in the Complaint), alleged to have been transferred, remained part of the estate and was ultimately sold by the Debtors in a sale of substantially all their assets.

2.      Counts 1-3 and 6-7 of the Complaint should be dismissed to the extent that they relate to any other alleged acts because no other acts have been alleged and the pleading does not present a plausible claim.

3.      The fiduciary duty claims against the C&S Defendants (Counts 1-3) should be dismissed because the documents referenced by the Complaint do not purport to assign or undertake general partnership duties by the C&S Defendants.

4.      Count 14 of the Complaint should be dismissed because an accounting is a remedy that is not a stand-alone cause of action.

5.      Under Rule 41(d), the Court should order plaintiff to pay the costs of the C&S Defendants in the State Court Action that was voluntarily dismissed as to them. The State Court Action asserted the same claims against the C&S Defendants, and the plaintiff here clearly copied those allegations into this Complaint. Also, the Court should stay this proceeding until the plaintiff has paid the costs from the State Court Action.

6.      Under Rule 55(c), the Court should set aside the entry of defaults against the C&S Defendants because they have responded to the Complaint as of response date agreed between the parties. Also, under Local Rule 7012-2, the Court should deem timely the C&S Defendants' response to the Complaint because the parties agreed to an extension, but were unable to document it because of the Committee's insistence on the inclusion of terms going beyond the scope of the agreement.

## Statement of Facts

On June 19, 2015 (the "Petition Date"), the Debtors commenced their chapter 11 cases. By order dated February 10, 2016, the Court approved a sale of substantially all the Debtors' assets.

The substantive allegations that address the C&S Defendants are contained in Paragraphs 44-53 of the Complaint. The Complaint alleges that Messrs. Coward and Smith began acting as de facto general partners of Citadel Watford Disposal Partners, L.P. ("Citadel") by virtue of an assignment of a general partnership interest in Citadel to an entity controlled by them (Compl. ¶¶ 44-45). The assignment itself, however, was solely of economic rights; indeed, the assignment expressly states that the assignee "shall not be entitled or enabled to exercise any other rights or powers of a partner of the Partnership, including as a general partner of the Partnership." *See* Ex. A (¶ 1) hereto.

The Complaint also alleges that Messrs. Coward and Smith sent out a letter to Citadel limited partners on April 15, 2015, that Dunaway had been forced to transfer all assets of Pembroke Fields Holdings, LLC ("Pembroke") to ND Water (Compl. ¶¶ 48-49). The actual one-page letter, in contrast, merely informs the other limited partners that Dodson controls all the documents, that Coward and Smith are receiving some documents shortly, that they have loaned funds to Dunaway in the meantime to meet payroll and other essential obligations and that they will report back shortly. *See* Ex. B hereto. There is simply no mention of any proposed transfer of assets.

The Complaint then alleges that the C&S Defendants arranged to assign the Dahl Lease from Pembroke to ND Water (Compl. ¶¶ 51-52). The Complaint alleges that, after commencement of the eviction action (the "Eviction Action"), the C&S Defendants sought to

3

rescind the assignment, that the rescission was invalid and that the actions of the C&S

Defendants resulted in the loss of the Dahl Lease (Compl. ¶ 53). Again, the Complaint's

allegations are contradicted either by documents referenced by the Complaint or by documents

that are part of the record of the chapter 11 cases. First, the complaint in the Eviction Action

makes no reference whatsoever to any proposed assignment of the Dahl Lease; instead, the basis

for the Eviction Action was nonpayment of construction expenses that resulted in almost $1.2

million in liens against the underlying property. *See* Ex. C (¶¶ 4-5) hereto. Second, the

schedules filed by the Debtors list the Dahl Lease as an executory contract of the estate. *See*

Appendix to Motion of Louis Bridges To Dismiss Complaint ("Bridges' App'x"), Ex. G. Third,

the Dahl Lease was sold by the Debtors as part of their sale of substantially all their assets. *See*

*id.* Ex. H.

      The Complaint closely resembles the second amended complaint filed in the State Court

Action, initially commenced shortly before the Petition Date derivatively by a subset of Citadel

limited partners. *See id.* Ex. A. The C&S Defendants were voluntarily dismissed by stipulation

from the State Court Action on August 9, 2016. *See* Ex. D hereto. The claims against the C&S

Defendants are virtually the same as set forth in the Complaint; indeed, it is readily apparent that

the Committee cut and pasted the allegations from the second amended complaint in the State

Court Action to the Complaint. *Compare* Compl. ¶¶ 44-53 *with* Bridges' App'x Ex. A ¶¶ 57-66.

      After agreeing to an extension of the deadline to May 1 and then to May 16, 2017, for the

C&S Defendants to respond to the Complaint, the parties did not reach agreement on the form of

a stipulation because Committee counsel insisted on a provision that addressed the Court's

authority over this proceeding. In the email correspondence between the parties, undersigned

counsel requested notice if the C&S Defendants needed to file a motion requesting the extension

to respond to the Complaint. *See* Ex. E hereto. Undersigned counsel then sent several additional emails in an effort to resolve the issue. *See* Ex. F hereto. Instead, and without any notice, plaintiff's counsel requested on May 5, 2017, that the Clerk enter defaults against each of the C&S Defendants.

**Argument**

**I.    Motion To Dismiss**

The Complaint asserts the following causes of action against the C&S Defendants: (a) fiduciary duty claims (Counts 1-3); (b) intentional fraudulent transfer (Count 6); (c) conversion (Count 7); (d) declaratory judgment with respect to an assignment of the Dahl Lease (Count 13); and (e) an accounting (Count 14). Each of the Counts asserted against the C&S Defendants fails to state a claim upon which relief may be granted.

**A.    The Dahl Lease Was Not Transferred.**

The Complaint alleges that an attempted assignment of the Dahl Lease and a rescission of that assignment prior to the Petition Date caused the forfeiture of the Dahl Lease. Yet, Pembroke scheduled the Dahl Lease as an executory contract in its schedules. *See* Bridges' App'x Ex. G. Since the Dahl Lease was property of the estate as of the Petition Date, the plaintiff is judicially estopped from taking an inconsistent position with a position that the Court previously accepted. *See In re Superior Crewboats, Inc.*, 374 F.3d 330, 335-36 (5th Cir. 2004) (holding plaintiff judicially estopped from asserting claim not listed in schedules); *In re Network Access Solutions Corp.*, 330 B.R. 67, 77-78 (Bankr. D. Del. 2005) (holding committee judicially estopped from attacking transfers addressed in assumed agreements when committee supported assumption).

Nor did the basis for the Eviction Action have anything to do with a proposed assignment of the Dahl Lease, as suggested by the Complaint. Indeed, the complaint in the Eviction Action

5

makes absolutely no reference to any purported assignment. Instead, Dahl sought eviction for nonpayment of construction expenses that resulted in almost $1.2 million in liens against the underlying property. *See* Ex. C hereto.

Ultimately, the Dahl Lease was sold to the buyer as part of the sale of substantially all the Debtors' assets. *See* Bridges' App'x Ex. G. Contrary to the Complaint's allegations, therefore, the Debtors did not forfeit the value of the Dahl Lease.

Since the estate contained the Dahl Lease as of the Petition Date and since the Debtors obtained value for the Dahl Lease in the sale of substantially all their assets, the causes of action against the C&S Defendants that are based on the loss of the Dahl Lease are meritless. These include no breach of fiduciary duty (Compl. ¶ 67), no intentional fraudulent transfer (*id.* ¶ 101) and no conversion (*id.* ¶ 106). Nor is there any controversy about the assignment of the Dahl Lease because any such controversy has no meaning (*id.* ¶ 152).

**B.     The Complaint Fails To Plead Any Other Acts Against the C&S Defendants.**

The Complaint refers vaguely to other acts by the C&S Defendants (other than with respect to the Dahl Lease), but the allegations provide no detail about such acts. The Complaint references transfers of assets of Citadel other than the Dahl Lease (Compl. ¶¶ 67, 78, 80, 101, 106), but does not specify what were these other assets. The Complaint also alleges misconduct by the C&S Defendants (*id.* ¶¶ 74-75), but does not specify what was the misconduct.

These conclusory and speculative allegations are insufficient to allege any claim and should be disregarded. *In re Jevic Holding Corp.*, 2011 WL 4345204, at *13 (Bankr. D. Del. Sept. 15, 2011) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to support a claim.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Nacco Indus. v. Applica Inc.*, 997 A.2d 1, 15 (Del. Ch. 2009) (allegations made

on information and belief must be supported with specific facts in order to survive motion to dismiss).

### C.    The C&S Defendants Owed No Fiduciary Duty as a General Partner.

The fiduciary duty claims against the C&S Defendants should be dismissed because they did not act as a general partner of Citadel, and therefore owed no fiduciary duty to other limited partners. Although the Complaint alleges that Dodson assigned a general partner interest to an entity owned by Coward and Smith, the very document that the Complaint references assigns only an economic interest and expressly states that the assignee has no power to exercise rights or powers of a general partner. *See* Ex. A hereto.

Nor does the letter sent by Messrs. Coward and Smith to other Citadel limited partners on April 15, 2015, purport to take actions as a general partner. Instead, the letter shows the good faith of Messrs. Coward and Smith in loaning funds to Dunaway to pay payroll and other essential obligations while they learned the facts. *See* Ex. B hereto. Nothing in the letter purports to assume responsibility as a general partner of Citadel.

Accordingly, the C&S Defendants owed no fiduciary duty as a general partner of Citadel. The derivative fiduciary duty claims of Counts 1-3 of the Complaint, therefore, fail to state a claim.

### D.    The Accounting Cause of Action Cannot Stand on Its Own.

The accounting cause of action in Count 14 of the Complaint should be dismissed because it cannot stand independently as a cause of action. It is black letter law that an accounting "reflects a request for a particular type of remedy, rather than an equitable claim in and of itself." *Stevanov v. O'Connor*, No. Civ. 3820, 2009 WL 1059640, at 15 (Del. Ch. Apr. 21, 2009) (emphasis added); *see also Addy v. Piedmonte*, 2009 WL 707641, at *23 (Del. Ch.

Mar. 18, 2009) (explaining that an accounting is "dependent on the viability and outcome of the underlying causes of action").

Since none of the other causes of action alleged against the C&S Defendants are viable, Count 14 must be dismissed as well.

## II.    Motion for Costs and a Stay

The allegations against the C&S Defendants in the second amended complaint in the State Court Action were copied almost verbatim by the Committee in the Complaint. Rule 41(d) provides protection to defendants who are sued twice on the same claim. Rule 41(d) provides that, "[i]f a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:  (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied." An action is "based on" the same claim when it is "predicated on the same facts" alleged in the first. *Blauinsel Stiftung v. Sumitomo Corp.*, No. 99 Civ. 1108, 2001 WL 1602118, at *9 (S.D.N.Y. Dec. 14, 2001).  As one court has explained, under Rule 41(d):

> [T]he court must consider whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second claim were present in the first.   In essence, it must inquire whether the present claim might have been adjudicated based upon the facts involved in the first.

*Young v. Dole*, No. 90 Civ. 2667, 1991 WL 158977, at *3 (E.D.N.Y. July 11, 1991) (internal quotations, citations, and alteration omitted).

### A.    The Court Should Grant Costs, Including Attorney's Fees.

The Court should grant costs to the C&S Defendants under Rule 41(d) in this case because such relief would serve the important goals the Rule is intended to advance. The Rule exists "to prevent vexatious litigation" and "forum shopping, especially by plaintiff[s] who have

suffered setbacks in one court and dismiss to try their luck somewhere else." *Microsoft Corp. v. WebXchange Inc.*, 715 F. Supp. 2d 598, 603 (D. Del. 2010) (internal quotations and citations omitted). It is also meant to protect defendants from "being forced to essentially twice defend the same action." *Huntley, L.L.C. v. Monterey Mushrooms, Inc.*, No. 08 Civ. 377, 2009 WL 2992553, at *4 (D. Del. Sept. 18, 2009) (internal quotations omitted); *see also Meredith v. Sovall*, 216 F.3d 1087 (Table), 2000 WL 807355, at *1 (10th Cir. June 23, 2000) (affirming award of costs, including attorneys' fees).

All of those harms are threatened here. The Committee sought to repackage and reinstitute the State Court Action in this Court to find a hospitable forum for the same claims that were prosecuted and ultimately dismissed voluntarily in the State Court Action. The C&S Defendants should not be forced to defend the same allegations twice. Accordingly, the plaintiff should be required to pay the costs of the C&S Defendants from the State Court Action.

The costs of the C&S Defendants, moreover, should include attorneys' fees. *See Huntley*, 2009 WL 807355, at *4 n.4 (instructing defendant to include attorneys' fees within an itemization of costs in support of a Rule 41(d) award); *see also Kent v. Bank of Am., N.A.*, 518 Fed. App'x 514, 517 (8th Cir. 2013) (awarding attorneys' fees as part of an order under Rule 41(d)); *Meredith*, 2000 WL 807355 at *1 (10th Cir. 2000) (same); *Blauinsel Stiftung*, 2001 WL 1602118, at *9 (S.D.N.Y. 2001) (same); *Esquivel v. Arau,* 913 F. Supp. 1382, 1388-92 (C.D. Cal. 1996) (same); *Aloha Airlines, Inc. v. Mesa Air Group, Inc.*, No. 07 Civ. 7, 2007 WL 2320672, at *4 (D. Haw. Aug. 10, 2007) (same); *Whitehead v. Miller Brewing Co.*, 126 F.R.D. 581, 582 (M.D. Ga. 1989) (same).

Because the description of taxable costs in Rule 54(d) is described as "costs other than attorney's fees," the absence of the attorney's fees qualifier in Rule 41(d) indicates that it does not and should not limit the relief that rule provides. *See Esquivel*, 913 F. Supp. at 1390. Moreover, Rule 41(d) would not fulfill its purpose if attorneys' fees were excluded since they typically represent the overwhelming majority of the expenses incurred in litigation. To exclude such fees would severely undermine the Rule's deterrent effect, as well as its purpose of compensating defendants for wasted expenses from the previous action. *See id.* at 1391 ("[I]f Rule 41(d)'s purpose is to prevent undue prejudice to a defendant from unnecessary or vexatious litigation, there does not seem to be a clear reason why Rule 41(d) would provide only for an award of costs *exclusive* of attorneys' fees, since the typical defendant cannot adequately defend a case without incurring such fees."). In order for Rule 41(d) to serve its purpose in this case, attorneys' fees should be included in the costs that the plaintiff is required to pay.

## B.    The Court Should Stay This Proceeding.

Rule 41(d) also permits courts to stay the proceedings until a party has complied with an order to pay costs, and courts routinely do so. *See, e.g., Van v. Language Line Servs., Inc.*, No. 14 Civ. 3791, 2015 WL 225451, at *9 (N.D. Cal. Jan 16, 2015); *Quality Data Systems, Inc. v. Fin. Bus. Equip. Solutions, Inc.*, No. 08 Civ. 61790, 2009 WL 1393352, at *2 (S.D. Fla. May 18, 2009); *Cadle Co. v. Beury*, 242 F.R.D. 695, 700 (S.D. Ga. 2007); *Katen v. Katen*, No. 97 Civ. 275, 1998 WL 721092, at *3 (E.D.N.C. Mar. 4, 1998).

Indeed, a stay will be granted "<u>unless</u> there are special facts and circumstances presented which show that it would be unjust and inequitable to apply it." *World Athletic Sports Corp. v. Pahlavi*, 267 F. Supp. 160, 164 (S.D.N.Y. 1966) (emphasis added). "Moreover, it is generally held that the second action will be deemed vexatious until the inference is removed by some

10

showing on the part of the plaintiff upon whom such burden rests." *Id.* That approach makes good sense since the very purpose of the Rule would be stymied if a party were permitted to go forward with a new action, and impose additional costs on the defendants, without having first remedied the waste of resources inflicted in the previous action.

Accordingly, this action should be stayed until the plaintiff pays costs to the C&S Defendants for the costs and attorney's fees incurred in the State Court Action.

## III.    Motion To Set Aside Defaults and To Deem Response to Complaint Timely

Rule 55(c) authorizes the Court to set aside the defaults entered by the Clerk for good cause. There is ample good cause in this case. The C&S Defendants had in fact agreed with the plaintiff to a deadline of May 16, 2017, to respond to the Complaint and did, in fact, file their response on that date. Nor did the plaintiff provide the C&S Defendants with requested notice if they needed to file a motion for the extension in view of the parties' difficulty in concluding a simple stipulation to that effect. Since the C&S Defendants were not neglectful at all, the defaults should be set aside.

Further, since the C&S Defendants have asserted meritorious defenses, and the plaintiff would not be prejudiced in any way -- since the Committee agreed to the extension -- the defaults should be set aside. *See Medunic v. Lederer*, 533 F.2d 891, 893 (3d Cir. 1976) (reversing default for failure to consider prejudice to plaintiff and existence of meritorious defense); *see also United States ex rel. Shaver v. Lucas W. Corp.*, 237 F.3d 932, 933 (8th Cir. 2001) (affirming decision to set aside default when defendant did not intentionally delay responding to the complaint and had a meritorious defense, and plaintiff was not prejudiced).

Moreover, the Court should deem the response of the C&S Defendants to be timely notwithstanding the requirement in Local Bankruptcy Rule 7012-2 that an extension of time to respond to a complaint be approved by the Court. The C&S Defendants sought to enter a stipulation with the plaintiff concerning the agreed extension, but were unwilling to agree to include terms outside the scope of the agreement that are not typically included in such stipulations.

## IV.    Adoption of Other Arguments.

The C&S Defendants adopt arguments raised by other defendants to the extent such arguments are applicable to the C&S Defendants.

## V.    Conclusion.

For the foregoing reasons, the C&S Defendants respectfully request entry of an Order: (i) dismissing all the claims in the Complaint against the C&S Defendants; (ii) directing the plaintiff to pay costs (including attorney's fees) incurred by the C&S Defendants in defending the State Court Action and staying this action until such payment is made; (iii) setting aside the defaults entered against the C&S Defendants and deeming their response timely; and (iv) granting to the C&S Defendants such other and further relief as is just.

Dated:   May 16, 2017

MACAULEY LLC

_____/s/ Thomas G. Macauley_____
Thomas G. Macauley (No. 3411)
300 Delaware Avenue, Suite 760
Wilmington, DE 19801
Telephone:  (302) 656-0100
Facsimile:  (302) 654-4362

Attorneys for Defendants Carl Coward,
Alastair Smith and North Dakota
Water Partners, LLC

12