**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Citadel Watford Disposal Partners, L.P., et al., | ) ) | Case No. 15-11323 (KJC) |
| | ) | (Jointly Administered) |
| Debtors | ) ) | |
| | ) | |
| | ) | |
| Official Committee of Unsecured Creditors of Citadel Watford Disposal Partners, L.P., et al., | ) ) ) | Adv. Proc. No. 17-50024 (KJB) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Citadel Energy Partners, LLC, et al., | ) ) | |
| Defendants. | ) ) | |

**REPLY BRIEF IN SUPPORT OF MOTION OF LOUIS BRIDGES TO DISMISS COMPLAINT**

19083474v.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Binder v. PriceWaterhouse & Co. LLP (In re Resorts International Inc.)*
  372 F.3d 154 (3d Cir. 2004) ................................................................................................. 7

*Feist v. Consolidated Freightways Corp.*,
  100 F. Supp. 2d 273 (E.D. Pa. 1999) aff'd., 216 F. 3d 1075 (3d Cir. 2000),
  cert. den'd., 532 U.S. 920, 121 S. Ct. 1357, 149 L. Ed. 2d 27 (2001) ............................... 3, 4

*Gardner v. State Farm Fire and Casualty Company*,
  544 F.3d 533 (3d Cir. 2008) ............................................................................................ 3, 4, 5

*Green v. Dimeler Benz, AG*,
  157 F.R.D. 340 (E.D. Pa. 1994) ......................................................................................... 9, 10

*In re Seven Fields Settlement Corp.*,
  505 F.3d 237 (3d Cir. 2007) ................................................................................................. 6

*Infinity Investors Ltd. v. Kingsborough (In re: Yes! Entertainment Corp.)*,
  326 B.R. 141 (D. Del. 2004) .............................................................................................. 10, 11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 119 L.Ed. 2d 351, 112 S.Ct. 2130 (1992) ........................................................ 3

*Nelson v. County of Allegheny*,
  60 F.3d 1010 (3d Cir. 1995) ............................................................................................... 3, 5

*Newman-Green, Inc. v. Alfonso-Lorrain*,
  490 U.S. 826, 104 L.Ed. 2d 893, 109 S. Ct. 2218 (1989) ....................................................... 2

*Official Committee of Unsecured Creditors v. Cablevision Systems Corp. (In re: Valley Media Inc.)*
  2003 Bankr. Lexis 940 (August 14, 2003) .......................................................................... 11

*Pacor, Inc. v. Higgins*,
  743 F.2d 984 (3d Cir. 1984) ................................................................................................. 7

*United States ex rel Wulff v. CMA Inc.*,
  890 F.2d 1070 (9th Cir. 1989) .............................................................................................. 5

Defendant, Louis Bridges (**"Bridges"**), by and through his undersigned attorneys, hereby submits this Reply Brief in Support of the Motion to Dismiss Complaint and in support thereof, avers as follows:

### Introduction

In the Objection of Galvin/Solmonese, LLC, Liquidation Trustee for the Citadel Creditors' Grantor Trust, Successor to Citadel Watford Disposal Partners, L.P., et. al., to Defendant, Louis Bridges' Motion to Dismiss Complaint (the **"Objection"**), the Liquidation Trustee[1] does not contend that the Standing Order granted the Committee standing to assert any causes of action on behalf of the Debtors except Chapter 5 Avoidance Actions or to assert the existence of any factual or legal circumstances that could possibly create confusion over which party had standing to assert non-avoidance causes of action on behalf of the Debtors' Estates. *See* Objection at ¶ 2.  The Objection merely contends that, as a result of confirmation of the Debtors' Plan and the occurrence of the Effective Date, the Trustee now has standing to pursue all causes of action on behalf of the Debtors' Estates and that the proposed substitution of the Trustee for the Committee will remedy any jurisdictional defect in this Adversary Proceeding. *See* Objection at ¶ 12.[2]  This argument attempts to put the proverbial cart before the horse. While the Trustee was granted standing to bring the Causes of Action on the Effective Date, the Trustee has not yet been substituted as the plaintiff *nunc pro tunc* and none of the case law cited by the Trustee warrants granting *nunc pro tunc* relief under Federal Rule of Civil Procedure, Rule 17(a).  The Trustee's Objection ignores the case law developed in this Circuit permitting

---

[1] All capitalized terms not otherwise defined in this Reply Brief shall have the meaning ascribed to them in the Motion to Dismiss and the Trustee's Answer.

[2] In the Objection, the Trustee also asserts that the outcome of its Motion to Amend the Caption of this case is determinative of the outcome of the Motion to Dismiss.  At the hearing on the Motion to Amend the Caption, however, counsel for the Trustee represented to this Court that the Motion to Amend was merely an administrative step to reflect the fact that the all of the Debtors' causes of action had been transferred to the Trustee pursuant to the Plan.

*nunc pro tunc* substitution only in those cases where it is necessary to avoid injustice and requiring a party seeking to substitute in as plaintiff to establish that the failure to name the correct party was based upon an honest and understandable mistake.

As set forth below, the circumstances of this case do not justify the *nunc pro tunc* substitution of the Trustee for the Committee as plaintiff under Federal Rule of Civil Procedure 17(a). Accordingly, the Complaint should be dismissed and the Trustee should be required to refile the Complaint if, after conducting the required investigation into the facts underlying the causes of action, the Trustee believes that legal and factual bases exist for pursuing the claims.

## **Background**

Based upon the timing of the commencement of the Adversary Proceeding, it appears to be an attempt by the Committee (a) to manufacture jurisdiction in this Court over state law causes of action which have no bearing on the administration of the Debtor's estate, or (b) to insulate itself (and potentially the Liquidation Trust) from potential sanctions for failing to properly investigate the causes of action asserted against the defendants.

While Rule 17 of the Federal Rules of Civil Procedure appears to authorize the liberal exercise of a Court's authority to substitute a real party in interest, courts in this Circuit have refused to allow *nunc pro tunc* substitution when the failure to bring the action in the name of a correct party was not the result of an honest and understandable mistake. The rationale for this approach is that it would be unreasonable to allow an action to be filed by a party who knows that he or she is not the real party in interest solely to toll the statute of limitations or gain a tactical advantage.

The United States Supreme Court has stated "the existence of federal jurisdiction ordinarily depends on the facts as they exist when the Complaint is filed." *Newman-Green, Inc.*

*v. Alfonso-Lorrain*, 490 U.S. 826, 830, 104 L.Ed. 2d 893, 109 S. Ct. 2218 (1989).  The addition or substitution of a party after a suit is filed cannot create standing where none existed at the time the suit was filed.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n. 4, 119 L.Ed. 2d 351, 112 S.Ct. 2130 (1992).  It is undisputed that the Committee lacked standing to assert 13 of the 14 counts at the time it filed the Adversary Complaint.

When determining the identity of the correct party to bring an action is not difficult and when no excusable mistake has been made, courts in this Circuit rule that *nunc pro tunc* substitution will not be allowed and that the suit should be dismissed.  *See*, *Feist v. Consolidated Freightways Corp.*, 100 F. Supp. 2d 273, 275-276 (E.D. Pa. 1999) aff'd., 216 F. 3d 1075 (3d Cir. 2000), cert. den'd., 532 U.S. 920, 121 S. Ct. 1357, 149 L. Ed. 2d 27 (2001) (Court dismissed case when plaintiff failed to sustain burden of showing that he made "honest and understandable mistake" in brining suit in his own name when bankruptcy trustee was real party in interest); *Gardner v. State Farm Fire and Casualty Company*, 544 F.3d 533, 562-563 (3d Cir. 2008) (the "salutary principle" that actions should not be forfeited through honest mistake does not apply to situations in which a party with no cause of action files a lawsuit to toll statute of limitations and later obtains cause of action through assignment); *Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 n. 8 (3d Cir. 1995) (Rule 17 was intended to prevent forfeiture based on expiration of statute of limitations only when determination of proper party to sue is difficult or when understandable mistake has been made).  With respect to the element of proving that the mistake was honest and understandable, the party seeking to join bears the burden of proof.  *Feist*, *supra*. at 280.

In *Feist*, *supra*, the plaintiff sustained an injury while on the job.  Approximately one and one-half years after his injury, the plaintiff filed a Petition for Relief under Chapter 7 of the

Bankruptcy Code.  The plaintiff failed to disclose his potential claim against the defendant in his bankruptcy schedules and the bankruptcy case was closed without administering that asset.  After the bankruptcy case was closed, the plaintiff sued the defendant in his own name.  On the eve of trial, the defendant first learned of plaintiff's prior bankruptcy and moved to dismiss the case.  In granting the motion to dismiss and denying the bankruptcy trustee's motion to substitute as plaintiff, the District Court cited authorities holding that Rule 17 only allows a plaintiff to amend a complaint to name the correct party plaintiff in order to "avoid injustice" and when the failure to name the correct party plaintiff at the outset was based upon a good faith honest mistake.  *Id.* at 275-6.  Based upon an examination of the record, the Court was convinced that the timing of the plaintiff's bankruptcy case and the subsequent commencement of the personal injury litigation were an attempt to avoid sharing the proceeds of the litigation with the plaintiff's creditors.  In denying a request from the plaintiff's bankruptcy trustee to be substituted as party plaintiff, the Court held that the interest of Plaintiff's creditors in recovering some of the debts owed to them was not sufficient to justify substitution of the bankruptcy trustee.  *Id.* at 280.

In *Gardner, supra*, the plaintiff rented a house from Kevin Harper (**"Harper"**).  While the plaintiff was residing in the house, plaintiff's mother fell and was injured on the premises.  Plaintiff's mother subsequently died and plaintiff was appointed the personal representative for her mother's estate.  Plaintiff filed a lawsuit against Harper and obtained a default judgment.  Harper's insurer, State Farm Fire & Casualty Co. (**"State Farm"**), denied coverage citing a provision in its homeowner's policy that excluded coverage for injuries occurring while the property was leased to another.  In April 2005, the plaintiff filed suit against State Farm in the name of Harper.  In June 2005, after the statute of limitations had expired, plaintiff obtained an assignment of Harper's claims against State Farm.  Approximately five months later, plaintiff

filed a motion to substitute plaintiff, in her capacity as her mother's personal representative, as the real party in interest. The District Court granted the Motion. The Third Circuit reversed stating that the protection against dismissal contained in Rule 17(a) is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought. It should be applied only "when determination of the right party to sue is difficult or when an understandable mistake has been made." *Id*. at 563. Citing *United States ex rel Wulff v. CMA Inc.*, 890 F.2d 1070 (9th Cir. 1989), the Court continued:

> Rule 17(a) does not apply to a situation where a party with no cause of action files a lawsuit to toll the statute of limitations and later obtains a cause of action through assignment. Rule 17(a) is the codification of the salutary principle that an action should not be forfeited because of an honest mistake; it is not a provision to be distorted by parties to circumvent the limitations period. [The subcontractors] assignment to the [plaintiffs] of its claim against CMA cannot ratify the [plaintiff's] commencement of suit on a claim which theretofore did not exist.

*Id.*

The Court in *Nelson*, *supra*, conducting a similar analysis, but under Rule 15 of the Federal Rules of Civil Procedure, held that the rule was not intended to "save the claims of complainants who have sat on their rights", and "seek to take advantage of the Rule to perform an end run around the statute of limitations." *Id.* at 1017. In that case, a group of protestors sued Allegheny County and other entities for alleged violations of their civil rights under 42 U.S.C. §1983. A group of named plaintiffs sought class certification to bring the action on behalf of all similarly situated parties. Class certification was denied and the order denying certification was appealed. During the appeal, the statute of limitations ran on all claims. After the denial of certification was upheld on appeal, the plaintiffs filed an Amended Complaint joining two additional plaintiffs and two other claimants sought to intervene in the case. The District Court

-5-

granted a Motion to Dismiss all four additional plaintiffs and the Third Circuit affirmed on appeal. In affirming, the Third Circuit stated that the moving parties had ample time in which to file their claims, they were aware of their rights to bring the claims but nevertheless failed to add their names to the complaint. Having failed to demonstrate that their failure to join was due to a mistake, the Court held they were not entitled to relief.

As set forth more fully in Mr. Bridges' Opening Brief, it is abundantly clear from the terms of the Standing Order that the Committee lacked standing to bring 13 of the 14 counts contained in the Adversary Complaint. The Standing Order was entered on June 21, 2016. The Adversary Complaint was not filed until February 6, 2017. The Adversary Complaint was prepared and filed by the same experienced bankruptcy counsel who co-signed the Standing Motion seeking authority for the Committee to bring Chapter 5 avoidance actions. Accordingly, the Committee and its counsel were fully aware of the limitations of the Committee's standing to pursue the defendants and had more than ample time to seek additional authority to pursue other causes of action but failed to do so. Under the circumstances, the failure to file the Adversary Proceeding in the name of the correct party cannot be described as simply an "honest and understandable mistake" and permitting *nunc pro tunc* substitution is not necessary to "avoid injustice".

Mr. Bridges and the other defendants will be unduly prejudiced if this Court allows the *nunc pro tunc* substitution of the Trustee for the Committee retroactive to the date on which the Adversary Complaint was filed. In *In re Seven Fields Settlement Corp.*, 505 F.3d 237 (3d Cir. 2007), the Third Circuit Court of Appeals discussed the relationship between the filing date of an adversary proceeding and the correct test for determining if the Bankruptcy Court lacked jurisdiction to hear the claim. Under the test announced in the *Seven Fields* case, when the

complaint in an adversary proceeding is filed prior to confirmation of the debtor's plan, the Bankruptcy Court must use the "effect on the bankruptcy estate" test established in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984). When the complaint in the adversary proceeding is filed after confirmation of the debtor's plan, the Bankruptcy Court is required to use the more stringent "close nexus" test applied by the court in *Binder v. PriceWaterhouse & Co. LLP (In re Resorts International Inc.)* 372 F.3d 154 (3d Cir. 2004). In his Motion to Dismiss, Mr. Bridges reserved his right to challenge this Court's jurisdiction to hear the Adversary Proceeding. If this Court applies the *Pacor* test in its analysis of the jurisdictional questions raised by Mr. Bridges, it is more likely that this Court will determine that it possesses jurisdiction forcing Mr. Bridges and others to litigate claims arising under state law in a federal court that has little or no contact with the controversy. If, however, this Court utilizes the more stringent *Resorts'* test in determining whether it possesses jurisdiction over the Adversary Proceeding, it is highly likely that this Court will determine that it lacks jurisdiction resulting in the dismissal of the action or the transfer of the action to a more appropriate forum. The Trustee is keenly aware of this distinction and has cited the filing date of the Adversary Complaint in arguing that the *Pacor* test controls any determination of whether this Court has jurisdiction over the Adversary Proceeding. *See* Objection of Gavin/Solmonese LLC, Liquidation Trustee for the Citadel Creditors' Grantor Trust, Successor to Citadel Watford Disposal Partners, L.P., et. al., to Defendant, Jonathan P. Ruben, CPA's Motion to Dismiss [Doc. No. 81], at p. 6 n. 3.

In addition, based upon a review of the Adversary Complaint and the complaint filed in the California Action, it appears that the Committee simply copied the factual allegations set forth in the Complaint in the California Action and failed to conduct the required independent

investigation into the veracity of those allegations, resulting in a complaint which includes glaring factual inaccuracies.

As set forth in Mr. Bridges' Opening Brief, the fraudulent transfer claim against Mr. Bridges that was added by the Committee only cites his involvement in the alleged pre-petition transfer of the "Dahl Lease" to a non-debtor. According to the schedules filed by Debtor, Pembroke Fields, LLC, however, the Dahl Lease was still held by Pembroke Fields when it filed its Chapter 11 Petition. In addition, the Dahl Lease was later assumed and assigned by the Debtors in connection with a sale of substantially all of the Debtors' assets in these Cases. *See* Sale Order.

Because anyone who has participated in these Cases since the beginning, would be aware that Mr. Bridges' actions did not result in the assignment of the Dahl Lease prior to the Debtors' bankruptcy filings, the inclusion in the Adversary Complaint of the allegation about assignment of the Dahl Lease appears to be is frivolous. In the event discovery reveals that the Committee adopted the unsubstantiated allegations of the Investors without conducting its own investigation into the validity of those allegations, the Committee's actions in filing the Adversary Complaint would be sanctionable under Bankruptcy Rule 9011.

As set forth in Mr. Bridges' Opening Brief, on February 23, 2017, this Court confirmed the Debtor's Plan pursuant to which the Committee was dissolved. Article XII of the Plan contains provisions which release the Committee and its members from any claims or causes of action arising out of any act or omission by the Committee or its members related to the Cases through the effective date of the Plan. Had the Trustee waited until the Effective Date to commence the Adversary Proceeding, nothing in the Plan could prevent Mr. Bridges or any other defendants in the Adversary Proceeding from seeking sanctions under Bankruptcy Rule 9011 or

otherwise against the Trustee and/or its counsel. Accordingly, the Trustee and its counsel should not be permitted to use Bankruptcy Rule 7017, the exculpatory provisions of the Plan and the fact that the Adversary Proceeding was commenced by the Committee to shield itself from liability for any conduct otherwise found to be sanctionable by this Court or another court with proper jurisdiction. However, the operation of the exculpation provision in the Plan could accomplish just that result.

In short, the timing of the Complaint filing is highly suspect. The fact that the Complaint was filed by the Committee and not the Debtor or the Trustee post-Effective Date supports the conclusion that the timing was not due to a good faith honest mistake or belief that the Committee had standing but due to a tactical decision to use the Bankruptcy Code to frustrate the rights of the Defendants. Because there appears to be no reason, other than tactical, for the Committee to have filed the Adversary Complaint when it did and substitution is not necessary to avoid injustice, no basis exists for allowing the *nunc pro tunc* substitution of the Trustee for the Committee as plaintiff. Accordingly, the named Plaintiff lacks standing to pursue this proceeding.

The only cases cited in the Objection which arguably support the Trustee's position are not binding on this Court and are inconsistent with above-referenced controlling law. *Green v. Dimeler Benz, AG,* 157 F.R.D. 340 (E.D. Pa. 1994) arises out of a subrogation case in the Eastern District of Pennsylvania. In that case, the plaintiff was a physician who owned a professional practice. An automobile was owed by the practice but insured in the name of the plaintiff. The car was destroyed by fire and the insurance carrier paid plaintiff's claim. The insurance carrier later brought a subrogation action against the manufacturer of the automobile. That subrogation action was brought in the name of the plaintiff physician. The defendant

manufacturer removed the case from state court to the U.S. District Court for the Eastern District of Pennsylvania. The manufacturer later moved for summary judgment stating that under Federal Rules the action was not brought by the real party in interest. The plaintiff physician then moved to substitute the insurance company as plaintiff. The District Court allowed the substitution. In doing so, the Court referred to the fact that the matter was initially commenced in Pennsylvania State Court and under that Court's Rules of Civil Procedure, an insurance company is expressly authorized to file a subrogation action in the name of the insured. *Green, supra*, at 342. In its Opinion, the District Court noted the intention of Rule 17 to prevent forfeiture of claims when an understandable mistake has been made. Finding that the insurance carrier's mistake was understandable, the Court allowed the substitution.

The Trustee also cites *Infinity Investors Ltd. v. Kingsborough (In re: Yes! Entertainment Corp.)*, 326 B.R. 141 (D. Del. 2004) for the proposition that this Court may grant retroactive standing to the Committee. *In re: Yes!*, like *Green v. Dimeler*, is not binding on this Court, contains no analysis of the criteria applicable in this Circuit for granting retroactive standing to a creditors' committee. In that case, an avoidance action was filed by a secured creditor. A Plan was subsequently confirmed which transferred all the debtor's causes of action to a liquidating trust. Approximately two years later, the defendants filed a motion to dismiss the complaint for lack of standing. The Bankruptcy Court stayed its decision on the motion for thirty (30) days and allowed the Trustee to file a motion to substitute as plaintiff. The Bankruptcy Court later denied the motion for substitution and dismissed the complaint. The District Court reversed. With respect to what criteria to utilize in determining whether to grant a creditors' committee standing to pursue avoidance actions *nunc pro tunc*, the District Court relied upon an unpublished opinion of this Court which stated that *nunc pro tunc* substitution is a form of

-11-

"extraordinary relief." *See, Official Committee of Unsecured Creditors v. Cablevision Systems Corp. (In re: Valley Media Inc.)* 2003 Bankr. Lexis 940 (August 14, 2003) Bankr. D. Del. 2003), slip op. at 7. The *Yes!* opinion, however, ignores binding authority in this Circuit and includes no discussion of how the circumstances of that case justify "extraordinary" relief.

Because the Committee lacked standing to bring claims I through V and VII through XIV of the Adversary Complaint and the Trustee has failed to prove that the failure to bring the Adversary Proceeding in the name of the real party in interest was due to an honest understandable mistake, the Trustee cannot utilize Federal Bankruptcy Rule 17 to create jurisdiction where none existed at the time the Complaint was filed.

## Conclusion

For the foregoing reasons and the reasons set forth in Mr. Bridges' Opening Brief, Mr. Bridges respectfully requests that the Complaint be dismissed in its entirety.

        Respectfully submitted,

        **WHITE AND WILLIAMS LLP**

By:   /s/*John D. Balaguer*
       John D. Balaguer (DE No. 2537)
       Nicholas R. Wynn ((DE No. 5670)
       600 N. King Street, Suite 800
       Wilmington, DE 19801-3722
       Telephone: (302) 467-4501
       Facsimile: (302) 467-4551
       Email: balaguerj@whiteandwilliams.com

       and

       Joseph G. Gibbons
       1650 Market Street, 18th Floor
       Philadelphia, PA 19103
       Telephone: (215) 864-7074
       Facsimile: (215) 864-7123
       Email: gibbonsj@whiteandwilliams.com

       *Counsel for Defendant, Louis Bridges*

Dated: May 24, 2017

19083474v.1