IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Citadel Watford Disposal Partners, L.P., <u>et al.</u>,[1] | ) | Case No. 15-11323 (KJC) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

| | | |
|---|---|---|
| Gavin/Solmonese LLC, Liquidation Trustee for the Citadel Creditors' Grantor Trust, successor to Citadel Watford City Disposal Partners, L.P., <u>et al.</u>, | ) ) ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 17-50024 (KJC) |
| | ) | |
| CITADEL ENERGY PARTNERS, LLC., a Wyoming limited liability company; FORT BERTHOLD WATER PARTNERS, L.P., a Delaware limited partnership; STANTON DODSON, an individual; MARK DUNAWAY, an individual; NICOLAS J. VANDERWEY, an individual; LOUIS BRIDGES, an individual; PETER SIMONS, an individual; NICHOLAS TEMPLE, an individual; ERIC HOLOMAN, an individual; ALASTAIR SMITH, an individual; CARL COWARD, an individual; NORTH DAKOTA WATER PARTNERS, LLC, a Delaware limited liability company; JONATHON P. REUBEN, C.P.A., a California accountancy corporation; and DOES 1 through 100, inclusive, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Citadel Energy Services, LLC (7762); Pembroke Fields, LLC (0341); Citadel Energy SWD Holdings, LLC (5266) and Citadel Watford City Disposal Partners, LP (1520). The address for each Debtor is PO Box 2127, Watford City, North Dakota 58854.

And                                          )
                                             )
CITADEL WATFORD CITY DISPOSAL                )
PARTNERS, LP, a Delaware limited             )
partnership, CITADEL ENERGY SWD              )
HOLDINGS, LLC, a North Dakota limited        )
liability company, CITADEL ENERGY            )
SERVICES, LLC, a Wyoming limited             )
liability company, and PEMBROKE              )
FIELDS, LLC, a North Dakota limited          )
liability company,                           )
                                             )
     Nominal Defendants.          )

## AMENDED COMPLAINT

Gavin/Solmonese LLC, Liquidation Trustee for the Citadel Creditors' Grantor Trust (the "Trust"), successor to Citadel Watford City Disposal Partners, L.P., et al. (the "Liquidation Trustee") alleges for its complaint herein as follows:

## INTRODUCTION

1.    This is a derivative action brought by the Liquidation Trustee on behalf of Citadel Watford Disposal Partners, L.P. ("Citadel Watford"), Citadel Energy SWD Holdings, LLC ("Citadel Energy SWD"), Citadel Energy Services, LLC ("Citadel Energy Services") and Pembroke Fields, LLC ("Pembroke Fields") (collectively, "Citadel") against certain general partners, members, managers, officers and/or other entities and individuals for breach of fiduciary duty, gross mismanagement, waste, fraud, fraudulent concealment, conversion and other causes of action relating to, among other things, their fraudulent investment practices, commingling and self-dealing, conversion of business assets, unauthorized assignments of Citadel assets, and the loss of a lease central to Citadel's business.

2.      By this action, the Liquidation Trustee seeks damages, pre- and post-judgment interest, declaratory judgment, an accounting and such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

4.      This is a core proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2).

5.      The Liquidation Trustee initiates this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7001(2), 7001(7) and 7001(9).

6.      Pursuant to Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Liquidation Trustee consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

## PARTIES

8.      The Liquidation Trustee has standing to pursue these and other causes of action pursuant to the order confirming (the "Confirmation Order") the Amended Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured

Creditors (the "Plan") [see Case No. 15-11323, D.I. 473, 517], the Plan Supplement (the "Plan Supplement") [Id., D.I. 484], and the Liquidation Trust Agreement (the "Trust Agreement") [Id., D.I. 484-1], as successor to the Official Committee of Unsecured Creditors standing granted by the Court pursuant to its order entered on June 21, 2016. Id. at D.I. 351. The Court also entered an order granting the Liquidation Trustee's motion to amend the caption of this adversary proceeding to reflect the real party in interest. See Adversary Proceeding, D.I. 89.

9. Defendant Citadel Energy Partners LLC ("Citadel Energy") is a Wyoming limited liability company that, at all times relevant herein and upon information and belief, was a general partner of Fort Berthhold (defined below), and was located and transacting business within the County of Los Angeles, State of California, with its administrative office located in Century City, Los Angeles, California.

10. Defendant Fort Berthold Water Partners, L.P. ("Fort Berthold"), formerly known as Bakken Water Depot, LP, is a Delaware limited partnership.

11. Defendant Stanton Dodson ("Dodson") is an individual residing in the County of Los Angeles, State of California who, at all times relevant herein and upon information and belief, was a managing partner and/or managing member and/or member of Citadel and transacted business in the States of California and/or North Dakota.

12. Defendant Mark Dunaway ("Dunaway") is an individual residing in the State of California who, at all times relevant herein and upon information

and belief, was a managing partner and/or managing member and/or member of Citadel and transacted business in the States of California and/or North Dakota.

13. Defendant Nicolas J. Vanderwey ("Vanderwey") is an individual who, at all times relevant herein and, upon information and belief, was a managing partner and/or managing member and/or member of Citadel and transacted business in the States of California and/or North Dakota.

14. Defendant Louis Bridges ("Bridges") is an individual and attorney who, at all times relevant herein and upon information and belief, was a member and/or managing member of Pembroke, and provided legal and other services to one or more of the Citadel and/or Citadel-related entities, and resides in the State of Georgia.

15. Defendant Peter Simons ("Simons") is an individual residing in the State of Iowa.

16. Defendant Nicholas Temple ("Temple") is an individual who, at all times relevant herein and upon information and belief, served on the board of directors of Citadel Energy Services, was granted a 2% equity interest in Citadel Energy Services per a Director Agreement dated February 20, 2013, was an investor general partner in Fort Berthold, and resides in the State of Nevada.

17. Defendant Eric Holoman ("Holoman") is an individual who, at all times relevant herein and upon information and belief, served on the board of directors of Citadel Energy Services, was granted a 2% equity interest in Citadel Energy Services per a Director Agreement dated February 20, 2013, was an investor general partner in Fort Berthold, and resides in the State of California.

18.    Defendants Citadel Energy, Dodson, Dunaway, Vanderwey, Temple, Holoman, and Bridges are collectively referred to herein as the "Citadel Partners."

19.    Defendant Alastair Smith ("Smith") is an individual who, at all times relevant herein, was a *de facto* managing member, member and/or partner of Citadel, and was transacting business in the County of Los Angeles, State of California.

20.    Defendant Carl Coward ("Coward") is an individual who, at all times relevant herein, was a *de facto* managing member, member and/or partner of Citadel, and was transacting business in the County of Los Angeles, State of California.

21.    Upon information and belief, Defendant North Dakota Water Partners, LLC ("ND Water") is a Delaware limited liability company.

22.    Defendants Dunaway, Bridges, Smith, Coward and ND Water are collectively referred to herein as "ND Water Partners."

23.    Defendant Jonathan P. Reuben, C.P.A. ("Reuben") is a California accountancy corporation that, at all times relevant hereto, provided accounting services to Citadel and/or Dodson and was located within and transacting business in the County of Los Angeles, State of California.

24.    Upon information and belief, the true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Does 1 through 100, inclusive, and each of them, are unknown to the Liquidation Trustee at this time. The Liquidation Trustee therefore sues said

Defendants, and each of them, by such fictitious names. The Liquidation Trustee will advise this Court and seek leave to amend this Complaint when the names and capacities of each such Defendant have been ascertained. The Liquidation Trustee is informed and believes, and thereupon alleges, that each said Defendant designated as a Doe is responsible in some manner for the events and happenings herein referred to, or as hereinafter alleged.

25.    Upon information and belief, at all times mentioned herein, all Defendants, and each of them, were the agents, owners, employees, and/or employers of the other named Defendants, and each of them, that in so doing the things alleged, said Defendants were acting within the course and scope of said agency or employment, and with the knowledge, consent, and authorization of each of the other Defendants and all of them jointly.

## **FACTS**

26.    From approximately 2011 through the Petition Date, Defendants Dodson, Vanderwey and/or Dunaway fraudulently solicited investment funds for the operation of various business ventures supportive of and dependent upon the burgeoning shale oil-drilling industry in portions of the Bakken Oil Field in North Dakota. Shell companies that Dodson, Vanderwey and/or Dunaway created include, but are not limited to:

> a. Citadel Energy (formerly Great Dakota Energy, LLC), formed in Wyoming in December 2011;
>
> b. Fort Berthold, formed in Delaware in 2012;

c.  Bakken Water Depot, LLC ("Bakken"), formed in North Dakota in November 2012;

d.  Pembroke Fields Holdings, LLC, formed in North Dakota in August 2013;

e.  Pembroke SWD, LLC, a Georgia limited liability company;

f.  Citadel H2O, LLC, formed in Delaware in July 2014;

g.  H2O Partners, L.P., formed in Delaware in July 2014;

h.  ND Water, formed in Delaware in April 2015; and

i.  ND Water Solutions, formed in Delaware in April 2015.

27.    Dodson, Vanderwey and/or Dunaway used these as well as other entities as part of an ongoing interstate investment solicitation conspiracy between them, designed to defraud the investors and solicit investments in separate and distinct entities.  Pursuant to that scheme, Dodson and/or Dunaway located potential investors, used the interstate mail system and wires to fraudulently induce those investors into financing the construction and operation of various businesses supporting the North Dakota shale oil drilling industry; installed as the managing general partner of the new business a company that Dodson, Vanderwey and/or Dunaway wholly owned and/or controlled; generally took a 47.5% or 50% distribution and/or ownership interest in the venture; empowered another entity wholly owned and/or controlled by Dodson and/or Dunaway to operate the new business and/or own its assets; and used their management and operational power to secretly divert monies belonging to that new business to

themselves personally, their other companies, and as capital to expand and create separate new businesses, at the expense of the prior investors.

28.    Upon information and belief, at all times herein mentioned, Citadel, as well as numerous other shell companies owned and/or controlled by Dodson, Vanderwey and/or Dunaway, were the alter egos of the Citadel Partners, characterized by a unity of interest in ownership and control such that any individuality and separateness between them has ceased; with each entity being a mere shell instrumentality and conduit through which the Citadel Partners carried on their business by use of the entity's name; with the entity's business being so completely controlled, dominated, managed, and operated by the Citadel Partners such that any individuality or separateness between them does not and did not exist; and with the Citadel Partners intermingling the assets of themselves and the entities in order to suit the convenience of themselves and in order to evade payment of obligations and legal liability to various limited partners, investors, licensees, vendors, and other third parties.  Such intermingling and disregard for the corporate formalities included, but was not limited to:

> a.   Some or all of the Citadel Partners unilaterally instructing employees, contractors, and vendors to provide goods or services to each of the entities;
>
> b.   Some or all of the Citadel Partners' undercapitalization of entities controlled by them at all phases of development, construction, and operation, resulting in each entity repeatedly being unable to pay its own liabilities in the

ordinary course of business, and incurring substantial debts, liens, and operating deficits;

c.  Some or all of the Citadel Partners' unilaterally using monies belonging to one entity to pay the expenses of other entities, expenses of themselves personally, or to provide capitalization to newly formed entities, and to otherwise suit their convenience;

d.  Some or all of the Citadel Partners comingling the assets of the various Citadel-related entities including Citadel, with each other and with their personal assets;

e.  Some or all of the Citadel Partners taking of business-related actions as to one entity in direct response to actions that occurred at another entity or to themselves personally;

f.  Some or all of the Citadel Partners transferring of monies provided to a specific entity by investors in that entity to other entities or to themselves personally, and without the knowledge or authorization of the relevant investors;

g.  Some or all of the Citadel Partners ignorance of and disregard for corporate formalities when forming, organizing and operating the entities, and each of them, including as set forth above and herein; and

h. Some or all of the Citadel Partners' unilateral transfer of assets, supplies and employees form one entity to other entities.

29.    Throughout the course of the investments, business and operations of the Citadel entities, Bridges has performed extensive legal work on behalf of all Citadel entities, including Citadel.   Bridges is a personal friend and longtime legal advisor to Dunaway.  In many of the transactions overseen and advised by Bridges from about 2012 through the commencement of the above-captioned bankruptcy cases, the documents drafted by Bridges contained various errors as well as unfavorable provisions to the detriment of Citadel.  In addition, as a member and/or managing member of Pembroke, Bridges' Actions and Concealing Actions as described herein, and/or his failure to act, drove Citadel into bankruptcy.

30.    In addition, based upon information and belief and upon Citadel's books and records, Bridges authorized a transfer of Citadel property in the amount of $100,000 to Bakken, which Bakken then transferred, upon Bridges' instructions, to Dynamic Legal Recovery.[2]  This transfer occurred without proper authorization from Citadel.

**The Citadel Watford City Disposal Partners, LP Investment**

31.    In October 2013, the Citadel Partners mailed a private placement memorandum by interstate commerce and faxed by interstate telephone lines to a

---

[2] This transfer is the subject of a separate adversary proceeding.  See Adv. Pro. No. 17-50648.

significant number of individuals throughout the United States, this time for a new entity named Citadel Watford.  The stated purpose of Citadel Watford was the development and operation of a saltwater disposal well facility serving the Bakken Oil Shale of North Dakota.

32.    The private placement memorandum provided, in pertinent part, that those investors who elected "to be investor general partners of the partnership will have unlimited, joint and several liability for any claims against the Partnership, whether in tort or contract, law or equity … to the extent those liabilities cannot be satisfied from the sale of partnership assets or applicable insurance proceeds."

33.    Beginning in or around October 2013 and continuing at least through March 2014, Dodson and Dunaway, individually and on behalf of the Citadel Partners, called investors to solicit investments to Citadel Watford. Dodson also met with each investor in person.  At both these in-person meetings and during the phone calls, Dodson and Dunaway repeatedly and expressly guaranteed to the investors that they would not lose their investments; stated that the Citadel Partners were knowledgeable about the saltwater disposal well business and were qualified to run such a business, including false and overstated qualifications, and that experts would aid in running the business; stated that the Citadel Partners were working on several deals that would sell all existing assets of Citadel Watford; expressly promised that the Citadel Partners had understated the predictions in the offering documents and that the investors could expect even higher returns than predicted therein; and that all vendors had been paid expect

for "minor" disputed amounts.  In addition, the Citadel Partners made the representation to various of the investors separately that their investment closed out the necessary funding and that no more funds were needed by Citadel Watford.  Collectively, these representations are referred to herein as the "Citadel Fraudulent Representations."

34.    In addition, on or around June 21, 2014, the Citadel Partners invited the investors to visit the site of the saltwater disposal well.  At this in-person meeting, Dodson and Dunaway repeated the Citadel Fraudulent Representations expressly and repeatedly.

35.    The Citadel Partners installed Citadel Energy SWD as the managing general partner of Citadel Watford, owning a 47.5% interest.  Upon information and belief, Citadel Energy SWD is wholly-owned by Citadel Energy Services.  Dodson, Dunaway, Holoman and Temple are equity owners of Citadel Energy Services.

36.    The Citadel Partners installed Pembroke as the operator for the planned saltwater disposal well of Citadel Watford.  Upon information and belief, the principals of Citadel also own a controlling interest in Pembroke.

37.    Upon information and belief, the infrastructure assets of the Citadel Watford saltwater disposal project are owned by Pembroke SWD, LLC, a Georgia limited liability company, formed, owned and controlled by Dunaway himself.

38.    Citadel entered into an agreement with Leland Properties, LLC to acquire the surface lease opportunity and permits necessary to construct and

operate the saltwater disposal wells.  In addition, Citadel contracted with Leland Properties, LLC to provide equipment, maintenance, and consulting services for the operation of the saltwater disposal wells.

39.     On September 12, 2013, Pembroke, of which Bridges was a member and/or managing member, entered into the lease opportunity transferred by Leland Properties, LLC, entitled "Saltwater Injection and Surface Use Lease ("Dahl Lease"), with landowner Nathan Dahl ("Dahl").   The Dahl Lease contained various provisions that included, but were not limited to, that Citadel, Pembroke, and/or its Citadel-related affiliates would pay rent to Dahl, that Citadel, Pembroke, or their Citadel-related affiliates would pay all of the construction costs associated with improvements of the land and maintenance thereof, and that the Dahl Lease would not be assignable without the express permission of Dahl.

40.     The investors invested funds into Citadel Watford.  Despite being obligated to do so, the Citadel Partners never issued a limited partnership agreement for Citadel to the investors or solicited executing signatures from the investors.

41.     Because no limited partnership agreement was ever issued to or signed by the limited partners of Citadel, the Delaware Limited Partnership Act governs over the acts and omissions of the Defendants.

**The Citadel Partners' Operations and Wrongful Actions**

42.     From the formation of Citadel in 2013, the Citadel Partners proceeded to operate Citadel as if it was the alter ego of the Citadel Partners and

the other entities owned and controlled by Dodson, Dunaway, and/or Vanderwey, and failed to exercise their duties of care and loyalty owed to Citadel.  Actions performed by all or certain of the Citadel Partners during this time period included, but were not limited to ("Actions"):

a. Their misuse, ignorance, and disregard for any corporate formalities with respect to Citadel;

b. Their fraudulent refusal to perfect the limited partners' interests in Citadel by, among other actions, failing to provide a limited partnership agreement and obtain signatures from the limited partners;

c. Their use of monies belonging to the entities and their investors to form and capitalize other unrelated entities owned and controlled by the Citadel Partners separately or collectively;

d. Their diversion of monies needed by Citadel to pay the expenses incurred by them in the ordinary course of business to the Citadel Partners themselves and/or other shell companies owned and controlled by them;

e. Their diversion of monies needed by Citadel to pay off certain liens to the Citadel Partners themselves and/or other shell companies owned and controlled by them;

f. Their use of monies belonging to Citadel and their investors to pay the liabilities of the Citadel Partners

themselves and/or other shell companies owned and controlled by them;

g.  Their diversion of business opportunities away from Citadel, including by forming a new Citadel H2O entity to take advantage of water well opportunities identical to those operated by Citadel;

h.  Their use of monies belonging to Citadel and their investors to settle lawsuits brought against the Citadel Partners;

i.  Their commingling the assets of Citadel with other Citadel-related entities and with the personal assets of the Citadel Partners;

j.  Their failure to pay the debts of Citadel in the ordinary course of business, allowing the filing of various liens against the assets and leases of Citadel and their affiliated entities;

k.  Their failure to comply with the express terms of the various contracts, agreements and leases, including but not limited to the Dahl Lease, upon which the operations of Citadel relied;

l.  Their failure to act when they possessed information that (i) Dodson made numerous cash withdrawals or automatic transfers from Citadel's bank accounts to his own bank

account totaling approximately $1.1M; (ii) Dodson transferred or caused to be transferred funds from Citadel's bank accounts to entities known by Reuben to be controlled by Dodson in an amount in excess of $788,000.00; and (iii) Dodson transferred or caused to be transferred funds from Citadel's bank accounts to individuals related to Dodson in an amount exceeding $29,000; and

m. Their failure to put safeguards, administrative procedures, or financial oversight in place to protect Citadel's assets, the lack of which provided Dodson carte blanche access to Citadel's cash and other liquid assets that he accessed for the benefit of himself and others related to him in an amount in excess of $2.5M.

43.    At all times while performing the Actions, the Citadel Partners went to significant lengths to conceal the Actions from the investors of Citadel. Those lengths included, but were not limited to (collectively, the "Concealing Actions"):

a. Their falsifying, destroying and/or failing to keep certain books and records of Citadel;

b. Their removal of the books and records of Citadel from the business premises of the entities;

c.  Their falsifying tax returns of Citadel, including the K-1's issued to its limited partners;

d.  Their opening of bank accounts in the name of Citadel Partners, and particularly Dodson, to which only Dodson or the other Citadel Partners had access;

e.  Their hiring of Reuben, which was loyal to the Citadel Partners;

f.  Their hiring of key employees, including but not limited to operator Chris Dopson, who were loyal to the Citadel Partners only;

g.  Their instructing Reuben and key employees not to communicate with the investors;

h.  Their making of false representations to the investors regarding the operations of Citadel, and the conduct and actions being taken, or lack of action not taken, by the Citadel Partners to protect Citadel;

i.  Their providing Citadel with falsified documents and information relating to the operations of Citadel, and the conduct and actions being taken by the Citadel Partners; and

j.  Their eventual refusal to answer any questions or inquiries from the limited partners regarding the operations of Citadel.

44.     The investors were wholly unaware of the Actions and Concealing Actions until March or April 2015, as described further below.

45.     As a result of the Actions and Concealing Actions, and/or because of the failures to act by the Citadel Partners and by Smith and Coward, as Citadel *de facto* managing members, members, and/or partners, Citadel was driven into bankruptcy in June 2015.

## Purported Ouster of Dodson and "Discovery" of Mismanagement

46.     In July 2014, for undisclosed and unknown reasons, Dodson assigned to Bakken Investments, LLC ("Bakken Investments"), an entity owned by Coward and Smith, 9.713% of Citadel Energy SWD's remaining 44.5% general partner partnership interest in Citadel Watford.

47.     By the above-described conduct, as well as their continuing conduct described below, Coward and Smith began acting as *de facto* managing members, members, or partners for Citadel.

48.     For the remainder of 2014 and through about March 2015, the Citadel Partners refused to answer any questions or inquiries from limited partners regarding operations, business and status of Citadel.

49.     In March 2015, Dunaway and Bridges, joined by Coward and Smith, attempted to distance themselves from the illegal actions of the Citadel Partners by purporting to "oust" Dodson as the controlling partner for Citadel, including Pembroke Fields, the possessor of the Dahl Lease relating to Citadel's operations.

50.    On April 15, 2015, Coward and Smith personally mailed a letter to a subset of purported Citadel limited partners alleging that Coward and Smith, along with Dunaway, had just discovered the Actions in March 2015; that the Actions were solely the conduct of Dodson; and that Dodson's ouster was based upon those Actions.

**Formation of North Dakota Water Entities and Termination of Dahl Lease**

51.    In May 2014, a tornado struck the well and related facilities constructed on the land covered by the Dahl Lease.

52.    At the time of the tornado, many contractors had not been paid monies owed to them for their work constructing the well and related facilities on the Dahl land.

53.    The well and related facilities were totally destroyed.

54.    Upon information and belief, damages exceeded $600,000.

55.    Upon information and belief, insurance proceeds covered approximately half of that amount.

56.    Because of the lack of controls that should have been put in place by the Citadel Partners and/or by Coward and/or Smith, as Citadel *de* facto managing members, members, and/or partners, the insurance proceeds were not received by Citadel or, alternatively, were received by Citadel but subsequently were pilfered by one or more of the Citadel Partners, were not used to pay the contractors amounts they were owed, and were not used to reconstruct the well and related facilities.

57.     The failure to pay the contractors resulted in mechanics' liens being placed on the property, which clouded title to the Dahl Lease.

58.     These mechanics' liens constituted a default under the Dahl Lease.

59.     In the April 15, 2015 letter discussed above, Coward and Smith alleged that Dodson and Dunaway had a falling out as managers and/or members of Citadel and the Citadel-related entities, and that, as a result, Dunaway had been essentially forced to transfer all assets of Pembroke Fields, which underlie the operations of Citadel's business, to a new entity he had formed called "North Dakota Water Partners, LLC."  ND Water is controlled by Smith and Coward. ND Water Partners also formed an entity called ND Water Solutions.

60.     This transfer included, but was not limited to, the Dahl Lease.

61.     On May 14, 2015, Bridges, who had previously performed legal services on behalf of Dunaway and various Citadel-related entities, and who is a member of Pembroke Fields, sent a letter out on behalf of Coward, Smith and ND Water explaining the actions taken by himself and the other ND Water Partners.

62.     Bridges also drafted the purported and illegal Assignment and Assumption of the Dahl Lease, held by Pembroke Fields Holdings, LLC on behalf of Citadel, to ND Water dated May 1, 2015, despite the Dahl Lease expressly requiring permission of Dahl for such a transfer or assignment.

63.     The Assignment and Assumption of the Dahl Lease placed another cloud on the Dahl Lease's title through the attempt to transfer the Dahl Lease to ND Water without the express permission of Dahl.

64.    In late May 2015, Dahl filed and mailed a notice of intent to evict pursuant to the Dahl Lease.  In June 2015, Dahl followed up on that threat and filed a lawsuit to terminate the Dahl Lease.

65.    In late May 2015, after Dahl had filed the notice of intent to evict, the ND Water Partners sent a follow-up letter to the same subset of limited partners of Citadel, wherein they purported to rescind the assignment of the lease and all of Citadel's assets to the ND Water entities.

66.    After Citadel filed for bankruptcy in June 2015, Mr. Dahl sought relief from the automatic stay to continue his lawsuit to terminate the Dahl Lease.

67.    In order to effectuate a sale of Citadel's assets and to resolve the issues presented by Mr. Dahl's request for stay relief, a long and difficult negotiation ensued whereby Mr. Dahl's issues were resolved in connection with the sale of substantially all of Citadel's assets.

68.    Indeed, Mr. Dahl used the leverage he held in Citadel's bankruptcy case by, among other things, objecting to (i) Citadel's request to extend the time during which it could assume or reject certain unexpired leases [see Case No. 15-11323, D.I. 86] and (ii) Citadel's sale motion and motion to assume and assign executory contracts and unexpired leases [Id., D.I. 208].  As to the latter, Mr. Dahl sought, among other things, satisfaction and release of all known and unknown pre- and post-petition liens placed upon the Dahl Lease premises, as well as objecting to the $100,000 cure amount proposed by Citadel in its sale motion and contending that the cure amount exceeded $141,000.  Id.  Mr. Dahl, therefore, withheld his approval of the sale of Citadel assets unless he "(a)

approve[d] of the ultimate purchaser and its ability to operate the well located on the Leased Premises, (b) reache[d] an agreement with the purchaser with respect to the proper cure amount due under the Lease and payment thereof, (c) [was] relieved of any liability for the Mechanics' Liens and the Langus Lien and receive[d] assurances that these liens will not only be satisfied in full, but also released, (d) reache[d] an agreement with the purchaser with respect to resolution and/or satisfaction of any Unknown Liens Related to the Debtors' Operations, (e) [was] provided with adequate assurance of future performance under the Lease and (f) [was] satisfied with the revised Proposed Sale Order." Id. at ¶ 52.

69.    Monetization of Citadel's assets and the related sale of those assets could not have occurred without the agreement of and resolution of Mr. Dahl's claims related to, among other things, the clouds on the Dahl Lease title because of the actions and/or inactions of the Citadel Partners, the ND Water Partners, and/or Smith and/or Coward, as Citadel *de facto* managing members, members, and/or partners.

70.    Consequently, Citadel's assets were sold at a depressed value, causing further damage to Citadel.

**Reuben's Accounting Services**

71.    Upon information and belief, Reuben performed personal accounting services on behalf of Defendant Dodson, including the filing of Dodson's personal income tax returns in 2011, 2012, and 2013, and likely through 2014.

72.    Upon information and belief, at all times since Dodson and Dunaway undertook their plan to create investments in the North Dakota shale oil drilling industry in 2011, Dodson and Dunaway engaged Reuben, whom they believed would be loyal to the Citadel Partners at the expense of the limited partners.

73.    Reuben performed accounting services on behalf of Citadel.  Upon information and belief, Reuben also performed accounting services for other Citadel-related entities, including Citadel H2O, LLC, H2O Partners, L.P., and Bakken.

74.    As the accountant for Citadel, Reuben owed a duty to Citadel to exercise the ordinary skill and competence of an accountant.

75.    Despite its duty to Citadel, and upon information and belief, Reuben performed work for the non-Debtor entities which was billed to Citadel.

76.    Upon information and belief, Reuben reviewed and issued the K-1s for Citadel limited partners for 2014.

77.    Due to its receipt and review of documents relating to Citadel, as well as other Citadel-related entities, Reuben was in possession of information regarding the Citadel Partners' Actions and Concealing Actions, and particularly information regarding the commingling of monies. For example, Reuben possessed information that (i) Dodson made numerous cash withdrawals or automatic transfers from Citadel's bank accounts to his own bank account totaling approximately $1.1M; (ii) Dodson transferred or caused to be transferred funds from Citadel's bank accounts to entities known by Reuben to be controlled by

Dodson in an amount in excess of $788,000.00; and (iii) Dodson transferred or caused to be transferred funds from Citadel's bank accounts to individuals related to Dodson in an amount exceeding $29,000.

78.     Upon information and belief, given its access to the above-described financial information of the entities, Reuben was on notice of the wrongful nature of the Actions, Concealing Actions, and/or the Citadel Partners' failure to act. Reuben nevertheless did not inform any one of the Citadel Partners that their Actions, Concealing Actions, and/or failures to act, were wrongful.

79.     Despite possession of documents and information regarding the Citadel Partners' Actions, Concealing Actions, and failure to act as outlined above, Reuben breached its duty owed to Citadel.

**COUNT I**
**BREACH OF FIDUCIARY DUTY AGAINST THE CITADEL PARTNERS, THE ND WATER PARTNERS, AND DOES 1 THROUGH 100, INCLUSIVE**

80.     The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

81.     Upon the formation of Citadel in September 2013, the Citadel Partners installed themselves as the managing general partners, managing members and/or members of Citadel.

82.     After the ouster of Dodson in or around March 2015, the ND Water Partners installed themselves as the managing general partners, managing members or members of Citadel, expressly and/or by their conduct.

83.     At all times from September 2013, the Citadel Partners owed the fiduciary duties of care and loyalty to Citadel.

84.     At all times after about March 2015, the ND Water Partners owed the duties of care and loyalty to Citadel

85.     Notwithstanding their fiduciary duties, the Citadel Partners performed the Actions the Concealing Actions, and/or failed to act as set forth above; fraudulently concealed the performance of the Actions from the limited partners of Citadel; fraudulently induced the limited partners of Citadel into forbearing from actions that would damage the Citadel Partners and their wholly-owned and/or controlled entities; and engaged in other acts of self-dealing.

86.     Notwithstanding their fiduciary duties, the ND Water General Partners attempted to transfer the assets of Citadel, including the Dahl Lease, without authorization; engaged in a course of action which resulted in receiving a depressed value for the Dahl Lease that was central to the business of Citadel; and engaged in other acts of self-dealing.

87.     As such, the Citadel Partners and the ND Water Partners breached their fiduciary duties owed to Citadel.

88.     As a direct and proximate result of the breaches of fiduciary duty by the Citadel Partners and the ND Water Partners, Citadel suffered damages in an amount to be proven at trial.

89.     As a result of the misconduct alleged herein, the Citadel Partners and ND Water Partners are liable to the Trust.

**COUNT II**
**GROSS MISMANAGEMENT (DERIVATIVE) AGAINST**
**THE CITADEL PARTNERS, ND WATER PARTNERS,**
**AND DOES 1 THROUGH 100, INCLUSIVE**

90.     The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

91.     The Citadel Partners failed to prudently supervise, manage, and control the operations, business, and internal financial accounting and disclosures of the Citadel.   By their actions and/or inaction, and by engaging in the wrongdoing alleged herein, the Citadel Partners abandoned and abdicated their responsibilities and duties owed to Citadel.   For example, and as outlined above, despite possession of knowledge and information that Dodson transferred funds from Citadel's accounts for his own benefit or the benefit of others related to or controlled by him, the Citadel Partners failed to put into place any safeguards to prevent these transfers.   By committing the misconduct alleged herein, the Citadel Partners breached their duties of due care and loyalty to Citadel.

92.     While allegedly discharging their duties owed to Citadel, the Citadel Partners were aware of the unreasonable risks and losses associated with its misconduct.   Nevertheless, the Citadel Partners caused Citadel to engage in the actions described herein which the Citadel Partners knew had an unreasonable risk of damage to Citadel, thus breaching their duties to Citadel.   As a result, the Citadel Partners grossly mismanaged Citadel, thereby causing damage to Citadel including, but not limited to, driving Citadel into bankruptcy.

93.     The ND Water Partners failed to prudently supervise, manage, and control the operations, business, and internal financial accounting and disclosures

of the Citadel.   By their actions and/or inaction, and by engaging in the wrongdoing alleged herein, the ND Water Partners abandoned and abdicated their responsibilities and duties owed to Citadel.   By committing the misconduct alleged herein, the ND Water Partners breached their duties of care and loyalty to Citadel.

94.     While allegedly discharging their duties owed to Citadel, the ND Water Partners were aware of the unreasonable risks and losses associated with their misconduct.   Nevertheless, the ND Water Partners caused Citadel to engage in the actions described herein which the ND Water Partners knew had an unreasonable risk of damage to Citadel, thus breaching their duties to Citadel.   As a result, the ND Water Partners grossly mismanaged Citadel, thereby causing damage to Citadel including, but not limited to, driving Citadel into bankruptcy.

**COUNT III**
**BREACH OF DUTY OF LOYALTY: WASTE (DERIVATIVE) AGAINST**
**THE CITADEL PARTNERS, ND WATER PARTNERS,**
**AND DOES 1 THROUGH 100, INCLUSIVE**

95.     The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

96.     The Citadel Partners removed or diverted Citadel assets for which Citadel received no benefit and which drove Citadel into bankruptcy.

97.     The ND Water Partners removed or diverted corporate assets for which Citadel received no benefit and which drove Citadel into bankruptcy.

98.     The Citadel Partners entered into transactions that were so one sided that no business person of ordinary, sound judgment could conclude the corporation has received adequate consideration.

99.    The ND Water Partners entered into transactions that were so one sided that no business person of ordinary, sound judgment could conclude the corporation has received adequate consideration.

100.    Among the wasteful transactions are those identified above, plus various expenditures that the Citadel Partners caused Citadel to make.  These wasteful transactions and expenditures had the effect of lowering investors' return and of increasing expenditures which served no legitimate corporate purpose and which drove Citadel into bankruptcy.  The expenditures were essentially improper corporate gifts unsupported by consideration and so unreasonably disproportionate to the benefits created by the expenditures.

101.    Among the wasteful transactions are those identified above, plus various expenditures that the ND Water Partners caused Citadel to make.  These wasteful transactions and expenditures had the effect of lowering investors' return and of increasing expenditures which served no legitimate corporate purpose and which drove Citadel into bankruptcy.  The expenditures were essentially improper corporate gifts unsupported by consideration and so unreasonably disproportionate to the benefits created by the expenditures.

102.    As a direct and proximate result of the breaches of fiduciary duty by the Citadel Partners and the ND Water Partners, Citadel suffered damages in an amount to be proven at trial.

103.    As a result of the misconduct alleged herein, the Citadel Partners and ND Water Partners are liable to the Trust.

## COUNT IV
## FRAUD AGAINST THE CITADEL PARTNERS,
## DOES 1 THROUGH 100, INCLUSIVE

104.    The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

105.    As described above, from approximately November 2012 through 2015, the Citadel Partners and Does 1 through 100, and each of them, engaged in the Actions and Concealing Actions, or failed to act, as set forth above.  The Citadel Partners also knowingly and intentionally made numerous false representations to investors, both orally and in writing.  Such representations included, but were not limited to, the Citadel Fraudulent Representations; the representation that all money provided to Citadel would be used for its saltwater disposal well businesses; that the investors' interests in Citadel would be perfected; the representation that Citadel would be operated separately and independently of the Citadel Partners and their other shell companies; and that the Citadel Partners would not conduct operations of Citadel in a manner akin to the Actions and Concealing Actions.

106.    In or around late April and May 2015, the investors first discovered the Actions, Concealing Actions, and the falsity of the representations made to them by the Citadel Partners from approximately November 2012 through 2015.

107.    The Citadel Partners' false representations were made with the intent to defraud the investors and Citadel; to induce the investors and other limited partners into financing the construction and operation of the saltwater

disposal wells; and to induce the investors and other limited partners into temporarily forbearing from taking legal actions against the Citadel Partners.

108.   In light of the fiduciary relationship between the Citadel Partners, Citadel and the investors, the investors reasonably relied on the Citadel Partners' representations and were actually induced into taking or forbearing from actions, including, but not limited to, all of the actions aforementioned.

109.   As a direct and proximate result of such fraud, Citadel suffered damages in an amount to be proven at trial.

110.   As a result of the fraud alleged herein, the Citadel Partners are liable to the Trust.

## COUNT V
## FRAUDULENT CONCEALMENT AGAINST CITADEL PARTNERS, DOES 1 THROUGH 100, INCLUSIVE

111.   The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

112.   As described above, from approximately November 2012 through 2015, the Citadel Partners and Does 1 through 100, and each of them, engaged in the Actions and Concealing Actions, or failed to act, as set forth above.   In addition, the Citadel Partners made numerous false representations to investors, both orally and in writing.  Such representations included, but were not limited to, the Citadel Fraudulent Representations; the representation that all money provided to Citadel would be used for the saltwater disposal well business; that the investors' interests in Citadel would be perfected; the representation that Citadel would be operated separately and independently of the Citadel Partners

and their other shell companies; and that the Citadel Partners would not conduct operations of Citadel in a manner akin to the Actions and Concealing Actions.

113.    In the course of making the representations, the Citadel Partners failed to disclose to the investors numerous facts which materially qualified their representations, and which rendered their representations likely to mislead.  Such undisclosed facts included, but were not limited to, the fact that the Citadel Partners intended to use the monies provided to them by the investors for purposes other than the construction and operation of the Citadel saltwater disposal wells; that the Citadel Partners did not intend to perfect the investors' interests in Citadel; that the Citadel Partners did not intend to operate Citadel separately and independently from the Citadel Partners individually as well as the other businesses and operations of their shell companies; and that the Citadel Partners intended to perform, did perform, and intended to continue performing the Actions and Concealing Actions.

114.    At the time they engaged in the Actions and the Concealing Actions, and failed to disclose certain facts, such facts were known and accessible only to the Citadel Partners, and the Citadel Partners knew such facts were known and accessible only to the Citadel Partners.  The Citadel Partners nevertheless intentionally engaged in the Actions, Concealing Actions, and failed to disclose those facts.

115.    Also at the time they performed the Actions, Concealing Actions, and failed to disclose facts, the Citadel Partners took affirmative steps to

materially conceal the facts.  Such steps included, but were not limited to, the Concealing Actions described herein.

116.    The Citadel Partners failed to disclose and took affirmative steps to conceal these materials facts for the purpose of defrauding Citadel; including investors and other limited partners into financing the construction and operation of the saltwater disposal wells; and inducing the investors, Citadel into temporarily forbearing from taking legal actions against the Citadel Partners.

117.    Had the investors and Citadel known of the undisclosed and concealed facts, they never would have agreed to take certain actions including, but not limited to, financing the construction and operation of the saltwater disposal wells; and temporarily forbearing from taking legal action against the Citadel Partners.

118.    As a direct and proximate result of such fraudulent concealment, Citadel suffered damages in an amount to be proven at trial.

119.    As a result of the fraudulent concealment alleged herein, the Citadel Partners are liable to the Trust.

### COUNT VI
### FRAUDULENT TRANSFERS BY CITADEL PARTNERS,
### ND WATER PARTNERS, AND DOES 1 THROUGH 100, INCLUSIVE,
### UNDER 11 U.S.C. § 548

120.    The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

121.    As described above, the Citadel Partners fraudulently transferred assets belonging to Citadel with an intent to defraud Citadel, its constituencies and/or entities to which Citadel was obligated.  Those fraudulent transfers (the

"Transfers") included, but were not limited to, using Citadel monies to pay the expenses of or to provide capital to entities formed by Dodson, Vanderwey, and/or Dunaway.

122.    As described above, the ND Water Partners fraudulently transferred assets belonging to Citadel with an intent to defraud Citadel, its constituencies and/or entities to which Citadel was obligated.  Those fraudulent transfers (the "Transfers") included, but were not limited to, assigning or causing to have assigned the Dahl Lease.

123.    Based on the actions of the Citadel Partners and the ND Water Partners, Citadel received less than a reasonable equivalent value in exchange for the Transfers.

124.    The Transfers either: (a) were made while Citadel was insolvent or caused Citadel to become insolvent as a result of such transfers; (b) left Citadel with unreasonably small capital; and/or (c) were made while Citadel intended to incur, or believed that it had incurred, debts that it would not be able to pay as they became due.

125.    Based on the foregoing, the Transfers are avoidable pursuant to 11 U.S.C. § 548.

**COUNT VII**
**RECOVERY OF AVOIDED TRANSFERS AGAINST CITADEL PARTNERS, THE ND WATER PARTNERS AND DOES 1 THROUGH 100, INCLUSIVE, UNDER 11 U.S.C. § 550**

126.    The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

127.    The Citadel Partners and the ND Water Partners were the initial transferees of the Transfers or the immediate or mediate transferee of the initial transferee of the Transfers.

128.    The value of the Transfers, to the extent they are avoided pursuant to 11 U.S.C. § 548, may be recovered by the Liquidation Trustee pursuant to 11 U.S.C. § 550.

## COUNT VIII
## CONVERSION AGAINST CITADEL PARTNERS,
## THE ND WATER PARTNERS AND DOES 1 THROUGH 100, INCLUSIVE

129.    The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

130.    On numerous occasions, the Citadel Partners converted assets, supplies and other property from Citadel as described above for use by the Citadel Partners personally or by their other unrelated entities, businesses and operations.

131.    On numerous other occasions, the ND Water Partners converted assets, supplies and other property from Citadel as described above for use by ND Water Services and ND Water Services' unrelated business operations.

132.    The Citadel Partners and ND Water Partners were never authorized to convert the assets, supplies or other property of Citadel for use in an unrelated businesses and operations.

133.    As a direct and proximate result of the Citadel Partners' conversion, Citadel suffered damages in an amount to be proven at trial.

134.    As a direct and proximate result of the ND Water Partners' conversion, Citadel suffered damages in an amount to be proven at trial.

135.    As a result of these conversions, the Citadel Partners and the ND Water Partners are liable to the Trust.

## COUNT IX
## UNJUST ENRICHMENT AGAINST THE CITADEL PARTNERS AND DOES 1 THROUGH 100, INCLUSIVE

136.    The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

137.    Since approximately 2011, the Citadel Partners have engaged in an investment scheme designed to defraud investors in various businesses supporting the burgeoning North Dakota shale oil industry.  Pursuant to that scheme, the Citadel Partners located potential investors, induced those investors into financing the asset acquisition, construction and operation of those businesses; created shell companies owned and controlled by them to operate those businesses; and used their resulting control over those businesses to divert monies and services to themselves and other shell companies owned and controlled by them.

138.    Since its formation in 2013, the Citadel Partners deceived, defrauded and harmed Citadel for the benefit of the Citadel Partners and their other shell companies as part of the ongoing investment scheme.

139.    Such actions have resulted in the Citadel Partners' receipt of monies from Citadel; the Citadel Partners' receipt of monies rightfully belonging to Citadel or its investors; and the Citadel Partners' receipt of income that they would not have been able to obtain without the monies of Citadel and its investors.

140.   These diversions of Citadel assets enriched the Citadel Partners with monies and assets they would not have had otherwise.

141.   The Citadel Partners cannot justify these diversions.

142.   Citadel has not adequate remedy at law.

143.   As a direct and proximate result of the actions taken by Citadel Partners, the Citadel Partners have been unjustly enriched and Citadel suffered damages in an amount to be proved at trial.

144.   As a result, the Citadel Partners are liable to the Trust.

## COUNT X
## NEGLIGENCE AGAINST THE CITADEL PARTNERS, ND WATER PARTNERS, AND DOES 1 THROUGH 11, INCLUSIVE

145.   The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

146.   Upon the formation of Citadel in September 2013, the Citadel Partners installed themselves as the managing general partners, managing members and/or members of Citadel.

147.   After the ouster of Dodson in or around March 2015, the ND Water Partners installed themselves as the managing general partners, managing members, members of Citadel and/or *de facto* managing members, members and/or partners of Citadel, both expressly and/or by their conduct.

148.   At all times on and after September 2013, the Citadel Partners owed a duty of care to Citadel when they inserted and installed themselves as the managing general partners, managing members and/or members of Citadel.

149.     The Citadel Partners breached their duty of care by performing the Actions; performing the Concealing Actions; failing to act; inducing Citadel, and their limited partners, into forbearing from certain actions that would damage the Citadel Partners and their wholly-owned or controlled shell companies; failing to disclose material information to Citadel and its limited partners; and engaging in other acts of self-dealing.

150.     In performing each of these actions, or by failing to act, the Citadel Partners acted negligently and without the care necessary to ensure the lawful nature of each of their actions.

151.     But for the Citadel Partners' negligence, Citadel would not have been damaged.

152.     At all times after March 2015, the ND Water Partners owed a duty of care to Citadel when they inserted themselves as the managing general partners, managing members, members of Citadel and/or *de facto* managing members, members and/or partners of Citadel.

153.     The ND Water Partners breached their duty by engaging in the acts surrounding the Dahl Lease, among the other acts or failures to act as described above.

154.     In performing each of these actions, or by failing to act, the ND Water Partners acted negligently and without the care necessary to ensure the lawful nature of each of their actions.

155.     But for the ND Water Partners' negligence, Citadel would not have been damaged.

156.    Citadel suffered actual damages in an amount to be proven at trial.

157.    As a result, the Citadel Partners and the ND Water Partners are liable to the Trust.

**COUNT XI**
**PROFESSIONAL NEGLIGENCE AGAINST REUBEN**
**AND DOES 1 THROUGH 100, INCLUSIVE**

158.    The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

159.    In their capacity as accountants to Citadel, Reuben owed Citadel a duty of care in performing accounting services in connection with their businesses by using the skill, prudence, and diligence as other accountants possess and exercise.

160.    Throughout the accounting practices and transactions described herein, Reuben breached the accountants' duty of care and was thereby negligent.

161.    In connection with its performance of accounting and tax-related services on behalf of Citadel and other Citadel-related entities, Reuben was negligent by not taking adequate steps to safeguard the interests of Citadel.

162.    As described above, Citadel first became aware of facts that would reasonably lead to discovery of the negligent acts of Reuben in April or May 2015.

163.    But for Reuben's negligence, Citadel would not have been damaged.

164.    As a proximate result of Reuben's negligence, Citadel was driven into bankruptcy and suffered damages in an amount to be proven at trial.

165.    As a result, Reuben is liable to the Trust.  .

## COUNT XII
## BREACH OF FIDUCIARY DUTY AGAINST BRIDGES
## AND DOES 1 THROUGH 100, INCLUSIVE

166.    The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

167.    By virtue of Bridges' performance of legal services on behalf of and for the benefit of Citadel, and the resulting attorney-client relationship with Citadel, Bridges owed to a fiduciary duty to render legal services and advise Citadel ethically, carefully, skillfully, diligently, prudently and honestly.  By virtue of Citadel having placed trust and confidence in Bridges' integrity and purported abilities to render legal services, a confidential relationship existed at all relevant times between Bridges and Citadel.

168.    Bridges breached his fiduciary duty to Citadel and violated the relationship of trust and confidence by unethically, negligently, recklessly and/or intentionally performing, directing, advising and/or conducting the acts as set forth above.

169.    Bridges additionally breached his fiduciary duty to Citadel by engaging in various conflicts of interest, including obtaining an ownership interest in the operating entity of Citadel and organizing and engaging in the North Dakota Water transactions.

170.    Citadel placed confidence in and relied upon Bridges at the times he was performing legal services on behalf of and for the benefit of Citadel.

171.    Despite having voluntarily accepted the trust and confidence that Citadel placed in Bridges, in violation of this relationship of trust and confidence and in breach of his fiduciary duties, Bridges abused the trust and confidence of Citadel by his acts and omissions as set forth above and herein.

172.    Bridges performed the actions with the intent to defraud Citadel, personally benefit at the expense of Citadel, and conceal the facts and wrongful nature of his acts and omissions.

173.    As described above, it was not until April or May 2015 that Citadel first became aware of facts that would lead to the reasonable discovery of the wrongful conduct of Bridges.

174.    As a proximate result of the breaches of fiduciary duty by Bridges, Citadel suffered damages in an amount to be proven at trial.

175.    As a result, Bridges is liable to the Trust.

## COUNT XIII
## PROFESSIONAL NEGLIGENCE AGAINST BRIDGES AND DOES 1 THROUGH 100, INCLUSIVE

176.    The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

177.    In his capacity as attorney and legal counsel to Citadel, Bridges owed Citadel a duty of care in performing legal services on behalf of and for the benefit of Citadel in connection with its business, operations and organization by using the skill, prudence, and diligence as other lawyers possess and exercise.

178.    Because of his acts and inaction described more fully above and below, Bridges breached the attorney's duty of care and was thereby negligent.

179.    In connection with Bridges' drafting of various documents relating to the business and operations of Citadel, Bridges was negligent by making errors in those documents and including provisions that were harmful to Citadel, failed to safeguard the interests of Citadel, or unfairly benefitted the Citadel Partners and/or ND Water Partners at the expense of Citadel.

180.    In connection with Bridges' organization and execution of the purported assignments and transfer of assets away from the entities and operators affiliated with Citadel, and Bridges' assignment of the Dahl Lease despite failing and/or refusing to obtain the permission of Dahl as expressly required, Bridges was negligent.

181.    It was not until April or May 2015 that Citadel first became aware of facts that would lead to the reasonable discovery of the wrongful conduct of Bridges.

182.    As a proximate result of the negligence of Bridges in connection with Citadel, Citadel was driven into bankruptcy and suffered damages in an amount to be proven at trial.

183.    As a result, Bridges is liable to the Trust.

## COUNT XIV
## TURNOVER OF CITADEL BOOKS AND RECORDS AGAINST ALL DEFENDANTS UNDER 11 U.S.C. § 542

184.    The Liquidation Trustee incorporates by reference each of the preceding paragraphs as if fully set forth herein.

185.    The Defendants are in possession of the full and complete books and records of Citadel.

186.    Pursuant to Section 9.11 of the Trust Agreement and 11 U.S.C §
542(e), the Liquidation Trustee is entitled to possession of Citadel's books and
records and can require third parties to turn over Citadel's books and records in
their possession.

187.    As a result, the Liquidation Trustee requests an order from the
Court requiring all Defendants to turn over all Citadel books and records in their
possession to the Liquidation Trustee.


[*REMAINDER OF PAGE LEFT INTENTIONALLY BLANK*]

**PRAYER FOR RELIEF**

WHEREFORE, the Liquidation Trustee respectfully requests that the Court

grant the following relief:

A.      For damages in an amount to be proven at trial;

B.      For pre- and post-judgment interest on all damages awarded

hereunder;

C.      For an order requiring all Defendants to turn over any and all

Citadel books and records in their possession to the Liquidation Trustee; and

D.      For such other and further relief as this Court may deem just and

proper.

Dated:  November 6, 2017          **SHAW FISHMAN GLANTZ**
                                  **& TOWBIN LLC**

                                  */s/ Thomas M. Horan*
                                  Thomas M. Horan (Bar No. 4641)
                                  Johnna M. Darby (Bar No. 5153)
                                  300 Delaware Avenue, Suite 1370
                                  Wilmington, Delaware  19801
                                  Telephone:  (302) 691-3774
                                  Email:  thoran@shawfishman.com
                                        jdarby@shawfishman.com

                                  *Counsel to Gavin/Solmonese LLC,*
                                  *Liquidation Trustee*