## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CITADEL WAFORD DISPOSAL | ) | Case No. 15-11323 (KJC) |
| PARTNERS, L.P. *et al.,*[1] | ) | (Jointly Administered) |
|             Debtors. | ) | |
| | ) | |
| | ) | |
| GAVIN SOLMONESE, LIQUIDATION | ) | |
| TRUSTEE FOR THE CITADEL | ) | |
| CREDITORS' GRANTOR TRUST, | ) | |
| Successor to Citadel Watford City | ) | |
| Disposal Partners, L.P., *et al.* | ) | |
| | ) | Adv. Pro. No. 17-50024 (KJC) |
|             Plaintiffs, | ) | |
|     v. | ) | |
| | ) | |
| CITADEL ENERGY PARTNERS, LLC, *et al.* | ) | |
| | ) | |
|             Defendants. | ) | |
| | ) | |

### OPENING BRIEF IN SUPPORT OF
### MOTION OF MARK DUNAWAY TO DISMISS AMENDED COMPLAINT

**COOCH AND TAYLOR, P.A.**
Robert W. Pedigo (DE No. 4047)
R. Grant Dick, IV (DE No. 5123)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
Telephone: 302.984.3800
Facsimile: 302.984.3939
rpedigo@coochtaylor.com
gdick@coochtaylor.com

*Counsel for Defendant Mark Dunaway*

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Citadel Energy Services, LLC (7762); Pembroke Fields, LLC (0341); Citadel Energy SWD Holdings, LLC (5266) and Citadel Watford City Disposal Partners, LP (1520). The address for each Debtor is PO Box 2127, Watford City, North Dakota 58854.

00496888

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

JURISDICTION ....................................................................................................................... 1

NATURE AND STAGE OF THESE PROCEEDINGS ............................................................ 1

SUMMARY OF THE ARGUMENT ....................................................................................... 4

FACTUAL BACKGROUND ................................................................................................... 6

APPLICABLE STANDARD .................................................................................................... 16

LEGAL ARGUMENT ............................................................................................................. 18

    I.     The Fiduciary Duty Claims Should Be Dismissed as the CWCDP Partnership Agreement Waived Any Fiduciary Duties. ............................................................... 18

    II.    The Fraud Claims Should be Dismissed for Failure to State Claims with Requisite Particularity as Required by Fed. R. Civ. P. 9(b) ........................................................ 20

        A.    Failure to Plead With Particularity as to Each Defendant ......................................... 21

        B.    Failure to Plead with Particularity as to the Actions and Concealing Actions ........... 23

    III.    The Fraudulent Transfer Claims Must be Dismissed ................................................. 27

    IV.    All Claims Against Dunaway Are Subject to Fed.R.Civ.P. 9(b) Particularity and Must Be Dismissed .................................................................................................................. 28

    V.    The Dahl Lease Was an Asset of The Debtors on the Petition Date and Was Assigned for Fair and Reasonably Equivalent Value per the Sale Order. ............................................... 29

        A.    The Dahl Lease was a Part of the Estates' Assets on the Petition Date...................... 30

        B.    The Dahl Lease was Assigned for Fair and Reasonably Equivalent Value ................ 31

CONCLUSION ......................................................................................................................... 34

# TABLE OF AUTHORITIES

## CASES

*Albert v. Alex Brown Mgmt. Services, Inc.*, 2005 WL 2130607 (Del.Ch. 2005) ........................................ 26

*American Title Insurance Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) .................................. 28, 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 5, 17

*Bank of America, N.A. v. Knight*, 725 F.3d 815 (7th Cir.2013.) ................................................................ 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................................. 5, 17

*Brinkmeier v. BIC Corp.*, 733 F.Supp.2d 552, 2010 WL 3360568 (D.Del. Aug. 25, 2010) ................ 21, 26

*Cornell Glasgow, LLC v. La Grange Properties, LLC*, 2012 WL 2106945 (Del.Super. 2012) ................ 25

*DFC Global Corp. v. Muirfield Value Partners, L.P.*, 2017 WL 3261190 (Del.Supr. 2017) .................... 32

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006) ........................................................................................... 7

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ....................................................................... 17

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ..................................................................... 17, 21

*Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548 (9th Cir. 2003) .................................. 28

*In re Conex Holdings, LLC*, 514 B.R 405 (Bankr. D. Del. 2014) .................................................... 5, 18, 22

*In re Elrod Holdings Corp.*, 412 B.R. 700 (Bankr.Del. 2010) .................................................................. 27

*In re Fruehauf Trailer Corp.*, 250 B.R. 168 (Bankr.D.Del.2000) ............................................................ 17

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) .................................................................. 26

*In re Global Link Telecom Corp.*, 327 B.R. 711 (Bankr. D.Del. 2005) .................................................... 27

*In re Network Access Solutions Corp.*, 330 B.R. 67 (Bankr. D.Del. 2005) .............................................. 33

*In re Superior Crewboats, Inc.*, 374 F.3d 330 (5th Cir. 2004) ................................................................. 33

*In re Suprema Specialties, Inc. Securities Litigation*, 438, F.3d 256 (3d Cir.2006) ................................. 21

*In re Syntax-Brillian Corp., et al.*, 2011 WL 3101809 (Bankr. D.Del. 2011) ............................................ 7

*In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996) ...................................................................... 28

*Iotex Commons, Inc. v. Defries*, 1998 WL 914265 (Del.Ch. 1998) .......................................................... 26

*ITW Global Investments Inc. v. American Industrial Partners Capital Fund IV, L.P., et al.*
2015 WL 3970908 (Del.Super. 2015) .................................................................................................. 25

*Khushaim v. Tullow Inc.*, 2016 WL 3594752 (Del.Super. 2016) .............................................................. 26

*Merritt v. United Parcel Service*, 856 A.2d 1196 (Del. 2008) .................................................................. 28

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) ............................................ 17, 21

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ....................................................................................... 31

*PBGC v. White*, 998 F.2d 1192 (3d Cir.1993) ......................................................................................... 18

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192 (3d Cir. 1993) .......................... 18

*Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) .................................................................................... 7

*Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*, 329 B.R. 438 (Bankr.D.Del.2005) ...............................18

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644 (W.D.Pa. 1999)......................18

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007)...........................................................................22

*Travelers Indemnity Company et al v. Cephalon, Inc., et al.*, 2015 WL 4717929 (3d Cir. 2015).............28

*United States ex rel. Moore & Co., P.A., v. Majestic Blue Fisheries, LLC*
    812 F.3d 294 (3d Cir. 2016).................................................................................17, 21, 23

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011)........................................................22

*Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097 (9th Cir. 2003) ........................................................17, 21

*Yost v. Nationstar Mortgage, LLC*, 2012 WL 4288590 (E.D. Cal. 2013) ...................................................22

## <u>STATUTES</u>

11 U.S.C. § 548.......................................................................................................................28

11 U.S.C. § 550.......................................................................................................................28

11 U.S.C. §101, *et. al.*..............................................................................................................1

28 U.S.C. §157(b)(2) ...............................................................................................................1

6 Del. C. Section 17-101, *et seq.*...............................................................................................6

## <u>RULES</u>

Fed.R.Bankr.P 7008................................................................................................................16

Fed.R.Bankr.P. 7012...............................................................................................................1

Fed.R.Civ.P 12(d) ..................................................................................................................7

Fed.R.Civ.P. 12(b)(6)...........................................................................................................1, 16

Fed.R.Civ.P. 8(a)(2)...............................................................................................................16

Fed.R.Civ.P. 9(b) .............................................................................................................*passim*

## <u>TREATISES</u>

Delaware Trial Handbook § 17:5..............................................................................................28

Defendant, Mark Dunaway ("Dunaway"), by his counsel, Cooch and Taylor, P.A., submits this *Opening Brief in Support of Motion of Mark Dunaway to Dismiss Complaint* (the "Opening Brief") and requests the dismissal of the amended complaint (the "Amended Complaint") in the above-captioned adversary proceeding (the "Adversary Proceeding" Adv. Pro. No. 17-50024) for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F.R.Civ.P." or "Federal Rule"). Federal Rule 12 is made applicable in this Adversary Proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## JURISDICTION

A matter raised in this Motion to Dismiss is a core proceeding pursuant to 28 U.S.C. §157(b)(2), however, with the exception of Claim VI of the Amended Complaint, the claims asserted by the Liquidation Trustee (defined below), are all non-core.[2]

## NATURE AND STAGE OF THESE PROCEEDINGS

On June 19, 2015 (the "Petition Date"), the Debtors each commenced their bankruptcy cases (the "Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §101, *et. al.* (the "Bankruptcy Code").

On June 30, 2015, this Court entered an Order authorizing the joint administration of the Cases under the caption *Citadel Energy Holdings, LLC*, Case No. 15-11322 (the "CEH Case").

On July 20, 2015, the Office of the United States Trustee ("OUST") filed its *Notice of Appointment of Creditors' Committee* in these Cases.

---

[2] In the event the Court does not dismiss all counts against Dunaway, Dunaway hereby reserves his rights to seek the withdrawal of the reference of this matter.  Pursuant to Del. Bankr. LR 7012-1, Mr. Dunaway does not consent to entry of final orders or judgments by this Court.

Upon the discovery that the Certificate of Formation of Citadel Energy Holdings, LLC, had been canceled (perhaps incorrectly) by the Delaware Department of State, Debtors moved to dismiss the CEH Case and for the remaining Debtors' cases to remain jointly administered under the case of debtor Citadel Watford City Disposal Partners, L.P., Bankr. Case No. 15-11323 (the cases of the remaining jointly administered Debtors are hereinafter referred to as the "Cases").

The Official Committee of Unsecured Creditors of Citadel Watford City Disposal Partners, L.P., *et al.* (the "Committee") remained subsequent to the dismissal of the CEH Case.

On May 5, 2016, the Debtors and the Committee filed the *Joint Motion for Entry of an Order: (A) Granting the Official Committee of Unsecured Creditors Standing to Pursue Causes of Action Belonging to the Debtors' Estates and Arising Under Chapter 5 of the Bankruptcy Code; and (B) Approving Procedures and Authority Governing Settlement of Chapter 5 Causes of Action* (the "Standing Motion") [Bkr. D.I. 320.]

The Standing Motion sought, among other things, derivative standing to pursue the Avoidance Actions (as defined in the Standing Motion) on behalf of the Debtors.

On June 21, 2016, this Court entered an order (the "Standing Order") granting the Standing Motion and authorizing the Committee to pursue Chapter 5 avoidance actions as set forth in the Standing Motion [Bkr. D.I. 351.]

On December 16, 2016, the Debtors filed their *Amended Joint Combined Disclosure Statement and Chapter 11 Plan of Liquidation Proposed by the Debtors and the Official Committee of Unsecured Creditors* (the "Plan") [Bkr. D.I. 473]. The Plan contemplated, among other things, the creation of a liquidation trust that would hold and administer the liquidation trust assets.

On January 13, 2017, Debtors filed its *Notice of Filing of Plan Supplement* (the "Plan Supplement"), to which was attached the Liquidation Trust Agreement (the "Trust Agreement") [See Bkr. D.I. 484.] The Trust Agreement created the Citadel Creditors' Grantor Trust (the "Trust") and provides for the appointment of Gavin/Solmonese LLC as liquidation trustee (the "Liquidation Trustee").

On February 6, 2017, the Committee commenced the Adversary Proceeding by filing a fourteen-count Complaint against Dunaway and various other defendants [Adv. D.I. 1.]

On February 23, 2017, the Court confirmed the Plan (the "Confirmation Order") [Bkr. D.I. 517.]

On March 9, 2017, the Plan became effective (the "Effective Date") [See Bkr. D.I. 527.] Pursuant to the Plan, upon the occurrence of the Effective Date, the Committee was dissolved automatically [Bkr. D.I. 517-1, ¶ S.]

On April 17, 2017, after the Effective Date and automatic dissolution of the Committee, the Liquidation Trustee filed its *Motion of Gavin/Solmonese LLC, Liquidation Trustee for the Citadel Creditors' Grantor Trust, Successor to Citadel Watford Disposal Partners, L.P., et al, for an Order Amending Captions to Reflect Real Party in Interest* (the "Caption Amendment Motion") [Bkr. D.I. 545.]

The Caption Amendment Motion alleges that as of the Effective Date, the Liquidation Trustee became the real party in interest of this Adversary Proceeding.

On May 23, 2017, the Court entered its *Order Granting Motion of Gavin/Solmonese LLC, Liquidation Trustee for the Citadel Watford Disposal Partners, L.P. et al., Amending Captions to Reflect Real Party in Interest* [Bkr. D.I. 563.]

On November 6, 2017, the Liquidation Trustee filed his Amended Complaint (the "Amended Complaint" cited herein as "Am.Compl.") [D.I. 121.]

Per stipulation of the Parties, the Defendants' deadline to answer or otherwise respond to the Amended Complaint has been set for December 6, 2017.

## SUMMARY OF THE ARGUMENT

The Amended Complaint contains fourteen (14) counts including various purportedly derivative counts on behalf of investors and/or creditors, against Dunaway and various other defendants.

The main causes of action in the Amended Complaint as they pertain to Dunaway can be divided into three categories: First, Counts I-III constitute fiduciary duty claims (the "Fiduciary Duty Claims"); second, Counts IV-VII constitute claims of fraud (the "Fraud Claims"); and third, Counts VIII-X constitute general tort claims (the "Tort Claims"). Each suffer their own fatal flaws, and in some cases, the grounds for dismissal permeate the totality of the Amended Complaint.

The factual allegations set forth in the Amended Complaint are unfortunately written from the perspective of investors being harmed in a derivative action, and are basically a slightly-revised copy of the derivative complaint previously pending in the United States District Court for the Central District of California (Western Division – Los Angeles) and styled *Leland Properties, LLC, et. al. v. Citadel Energy Partners, LLC, et al.,* Case No. 2:15-cv-04891-R-AJW (the "California Action")[3]. Despite being afforded the opportunity to amend the complaint, the

---

[3]  A copy of the California Complaint can be found in the Appendix to *Motion of Louis Bridges to Dismiss the Complaint*, Ex. A, Adv. D.N. 42-2. It is also available as filed by the Debtors in the *Debtors' Motion for Order Extending and Applying the Automatic Stay to Certain Non-Debtors*, Ex. A. [Bkr. D.I. 372.]

Committee and now the Liquidating Trustee failed to realign the claims, allegations, and causes of actions to make the claims therein intelligible, properly pled, and relevant to these Bankruptcy Cases.

The Fiduciary Duty Claims must be dismissed as Dunaway owed no fiduciary duties to the Debtors as set forth in the Limited Partnership Agreement of Citadel Watford City Disposal Partners LP. Most or all Fiduciary Duty Claims are pled from the context of investors in the Debtor Citadel Watford and as such, these cannot be brought per the operative partnership documents.

The Amended Complaint should be dismissed as to Dunaway because it fails the Supreme Court's requirement that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations in the Amended Complaint are pled generally, and not as to Dunaway individually, as the Liquidation Trustee has lumped Dunaway together with other defendants under defined terms, *e.g.* "Citadel Partners" and "ND Water Partners" among others.  This type of impermissible group pleading as to Defendants does not satisfy the "pleading requirements under *Twombly* and *Iqbal*." *In re Conex Holdings, LLC*, 514 B.R 405, 414-15 (Bankr. D. Del. 2014).  Thus, the Fraud Claims should be dismissed for lack of pleading with requisite particularity of identity of Defendants.

In addition to the Liquidation Trustee's failure to plead with particularity as to Dunaway, the Amended Complaint further fails to meet the general requirements as to pleading fraud claims, including the specific what, where, when and how.

 Furthermore, as claims sounding in fraud permeate all claims in the Amended Complaint, Rule 9(b) particularity applies to all related allegations. Therefore, without

particularized pleading, Counts I through X of the Amended Complaint all should be dismissed for lack of pleading with requisite particularity.

Finally, all postulations regarding the "depressed value" of the Dahl Lease must be excluded in any asserted damages. As the Dahl Lease was a part of the Debtors' assets on the Petition Date, there can be no alleged pre-petition transfer thereof. The Dahl Lease was ultimately assigned by the Debtors for "reasonably equivalent value" and as "a reasonable and fair exchange of consideration" in the Sale Order, and the Sale Order is binding on the Liquidation Trustee.  Therefore, to the extent any claims survive dismissal, the issue of the Dahl Lease and any damages arising therefrom should be dismissed from Counts I through X of the Amended Complaint.

## **FACTUAL BACKGROUND**

### **Formation of Debtor Citadel Watford City Disposal Partners, LP**

1.      On September 13, 2013, debtor Citadel Watford City Disposal Partners, LP was formed as a limited partnership pursuant to the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. Section 17-101, *et seq*.

2.      On September 16, 2013, Citadel Energy SWD Holdings, LLC, a North Dakota limited liability company entered into the Limited Partnership Agreement of Citadel Watford City Disposal Partners LP (the "CWCDP Partnership Agreement." A copy of the executed CWCDP Partnership Agreement is attached hereto as Exhibit A).[4] [5]

---

[4] ¶¶ 40 and 41of the Amended Complaint alleges that the Delaware Limited Partnership Act governs the acts and omissions of the Defendants due to the fact that no limited partnership agreement was ever issued to the limited partners. However, the CWCDP Partnership Agreement does exist, was executed, and would therefore govern the rights of the Debtor CWCDP (as opposed to the limited partners) *vis a vis* Dunaway. As the CWCDP Partnership Agreement is specifically referenced in the Amended Complaint,

3.      The CWCDP Partnership Agreement provides that the General Partner is now-Debtor Citadel Energy SWD Holdings, LLC and that Stanton Dodson ("Dodson") is the manager of the General Partner and that Dodson has authority to act on behalf of the Partnership as the manager of the General Partner and will be the primary signatory on behalf of the Partnership. *Exhibit A*, § 1.01.

4.      The CWCDP Partnership Agreement was executed by Stanton Dodson and Dunaway, both as purported managers of the General Partner: Citadel Energy SWD Holdings, LLC.

5.      Section 3.01 of the CWCDP Partnership Agreement states:

> [w]ithout limiting the foregoing provisions of this Section 3.01, the General Partner, through the actions of the General Partner's manager, Stanton Dodson, shall have the general power to manage or cause the management of the Partnership (which may be delegated to officers of the Partnership). . .

*Exhibit A*, § 3.01(b).

6.      Section 10.01(b) of the CWCDP Partnership Agreement states:

> This Agreement is not intended to, and does not, create or impose any fiduciary duty on any of the Partners (including without limitation, the

---

the CWCDP Partnership Agreement should be considered by the Bankruptcy Court without converting this Motion to Dismiss to a Motion for Summary Judgment.

[5] The documents which Dunaway relies upon in this Motion are either integral to the Amended Complaint and no dispute exists concerning their authenticity, or are matters of public record and therefore may be considered without converting the Motion to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *See Faulkner v. Beer*, 463 F.3d 130, 133-135 (2d Cir. 2006); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (finding that contents of documents appearing on a court's docket are proper subject for judicial notice at the motion to dismiss stage); *In re Syntax-Brillian Corp., et al.*, 2011 WL 3101809, *4 fn. 7 (Bankr. D.Del. 2011) (expounding on the various bases for permitting external documents without conversion to summary judgment.)

General Partner) hereto or on their respective Affiliates[6]. Further, the Partners hereby waive any and all fiduciary duties that, absent such waiver, may exist at or be implied by Law or in equity, and in doing so, recognize, acknowledge and agree that their duties and obligations to one another and to the Partnership are only as expressly set forth in this Agreement and those required by the Act.

*Exhibit A*, § 10.01 (b).

7.      Section 10.01(d) of the CWCDP Partnership Agreement states:

[t]he General Partner may consult with legal counsel, accountants and financial or other advisors and any act or omission suffered or taken by the General Partner on behalf of the Partnership or in furtherance of the interests of the Partnership in good faith in reliance upon and in accordance with the advice of such counsel, accountants or financial or other advisors will be full justification for any such act or omission, and the General Partner will be fully protected in so acting or omitting to act so long as such counsel or accountants or financial or other advisors were selected with reasonable care.

*Exhibit A*, § 10.01 (d).

8.      Section 10.01(e) of the CWCDP Partnership Agreement states:

[n]otwithstanding any other provision of this Agreement or otherwise applicable provision of law or equity, whenever in this Agreement the General Partner is permitted or required to make a decision: (i) in its "sole discretion" or "discretion" or under a grant of similar authority or latitude, such General Partner shall be entitled to consider only such interests and factors as it desires, including its own interests, and shall, to the fullest extent permitted by applicable Law, have no duty or obligation to give any consideration to any interest of or factors affecting the Partnership or the Limited Partners; or (ii) in its "good faith" or under another expressed standard, such General Partner shall act under such express standard and shall not be subject to any other or different standard.

*Exhibit A*, § 10.01 (e).

---

[6] Per the CWCDP Partnership Agreement: "Affiliate" means, with respect to a specified Person, any other Person that directly, or indirectly through one or more intermediaries, Controls, is Controlled by, or is under common Control with, such specified Person.

**The Ouster of Dodson**

9.      In March 2015, upon discovery of the illegal actions of Dodson, Dunaway and defendant Bridges, joined by Coward and Smith, attempted to distance themselves from the illegal action of Dodson by purporting to "oust" Dodson as the controlling partner for all Citadel-related entities, including Pembroke Fields, LLC, the possessor of the Dahl Lease relating to Citadel's operations. *Am.Compl.* ¶ 49.

10.      On April 15, 2016, Coward and Smith, also defendants in this action, mailed a letter (the "Coward/Smith Letter" a copy of which is attached hereto as <u>Exhibit B</u>)[7] to a subset of limited partners of Citadel Watford City Disposal Partners, LP stating that Coward and Smith learned that among other things key vendors and employees related to the salt water disposal well were either owed delinquent balances or in immediate dangers of going unpaid. *See Am.Compl.,* ¶ 50.

11.      The Coward/Smith Letter expressed concerns of Dodson's failure to pay vendors and employees regarding the saltwater disposal well and Dodson's misappropriation of funds. *Exhibit B.*

12.      The Coward/Smith Letter stated: [8]

    a.  In late March 2015, a meeting was held between [Stanton] Dodson and several CWCDP investors. Based on information received at that meeting, it became clear that key vendors and employees related to the salt water disposal well were either owed delinquent balances or in immediate danger of going unpaid;

---

[7] The Coward/Smith Letter should be considered by the Bankruptcy Court without causing this motion to dismiss to be converted to one of summary judgment. *See* fns. 4 and 5 *supra.*

[8] Contrary to the Liquidation Trustee's allegations in paragraph 59, the Coward/Smith Letter did not represent that Dunaway had been forced to transfer all assets of Pembroke Fields to a new entity controlled by Smith and Coward.

b. Dodson maintained exclusive controls of the books and records, including financial information, of CWCDP and a complete understanding of how CWCDP reached its current financial state is still unclear;

c. On April 8, 2015, a letter was sent to Dodson purporting to remove Dodson as manager of Pembroke fields, LLC – the entity with direct title [to] the relevant assets;

d. On April 9, 2015, approximately $113,000 was loaned directly to Mark Dunaway to be used solely for the purpose of meeting payroll and other obligations essential to the salt water disposal well. The loan was made directly through Dunaway to address the concern that Dodson might misappropriate the funds; and

e. Dunaway has provided access to corporate documents and an additional report upon review of these documents will be forthcoming.

*Exhibit B.*

## The Dahl Lease

13.     On September 12, 2013, Debtor Pembroke Fields, entered into the "Saltwater Injection and Surface Use Lease (the "Dahl Lease" a copy of which is attached hereto as <u>Exhibit C</u>) with landowner Nathan Dahl ("Dahl"). The Dahl Lease contained various provisions that included, but were not limited to, that the Operator, i.e. Pembroke Fields, shall:

a. be responsible for all costs and expenses in building, developing, improving and maintaining the leased property, facility and well bore and any improvements or associated with the same. Dahl Lease, ¶ 2(i);

b. pay monthly rent as set forth in the Dahl Lease. Dahl Lease, ¶ 4(b); and

c. not assign the Dahl Lease without consent of Mr. Dahl, such consent not to be unreasonably withheld, conditioned or delayed; provided however, Mr. Dahl shall approve any successor operator who has more experience in "operations" than Operator and has a net worth equal to at least one hundred and twenty (120%) of the net worth of the Operator as of the date this Lease is executed by both parties. Dahl Lease, ¶ 16(h).

*Exhibit C.*

14.     On May 14, 2015, Defendant Louis E. Bridges sent a letter (the "Bridges Letter" a copy of which is attached hereto as <u>Exhibit D</u>) to Joe Wilen, Alastair Smith, and Carl Coward

discussing the steps taken to resolve the actions of Dodson and prevent any further misappropriation of assets as previously alleged.

15.    The Bridges Letter states that, in an effort to ameliorate the actions of Dodson, Pembroke Fields, LLC and Citadel Energy Services, LLC transferred all assets, including the Dahl Lease, to North Dakota Water Solutions, L.P. *See Exhibit D*.

16.    However, as set forth in the *Objection of Debtors to Motion of Nathan Dahl for Relief From the Automatic Stay to Continue Eviction Proceedings Related to Saltwater Injection and Surface Use Lease Dated September 12, 2013* (the "Stay Objection") [Bkr. D.I. 44] any pre-petition assignment, attempted or otherwise, was never effective. *Stay Objection*, ¶ 27. The Dahl Lease could not be assigned. *Stay Objection*, ¶ 27. The pieces of paper it was written on were, essentially, worthless. *Stay Objection*, ¶ 27. As soon as the Debtors realized the error, they took steps necessary to correct the actions of their limited partners. *Stay Objection*, ¶ 27. The Dahl Lease was never transferred, and the Debtors did not breach the assignment provision of the Dahl Lease. *Stay Objection*, ¶ 27.

### The Bankruptcy Cases

17.    On June 19, 2015, the Debtors commenced the Bankruptcy Cases.

18.    On August 5, 2015, the OUST filed its Motion for Appointment of Chapter 11 Trustee Filed by United States Trustee [Original Bkr. Case, D.I. 76].

19.    In the Debtors' *Objection to the United States Trustee's Motion for the Appointment of a Trustee, or in the Alternative for the Appointment of an Examiner or the Conversion of the Cases to Chapter 7*, the Debtors deny all allegations of fraud by the Debtors' current management, including Dunaway. [Original Bkr. Case D.I. 121].

20.     In the *Joint Pre-Trial Memorandum Regarding the Motion of the United States Trustee's Motion for the Appointment of a Trustee, or in the Alternative for the Appointment of an Examiner or the Conversion of the Cases to Chapter 7*, signed by Debtors' counsel submitted to this Court states as follows (the "Pre-Trial Admissions"):

  a.  Mark Dunaway also began asking for profit and loss statements and related financial data relating to the Debtors from Stanton Dodson and continued asking for such information for several months until the spring of 2015 (¶ 38);

  b.  Stanton Dodson had sole access to the Debtors' profit and loss statements and related financial data relating to the Debtors. (¶ 39a);

  c.  None of the bank records indicate that Mark Dunaway improperly received any funds from the Debtors' estates (¶ 45b);

  d.  Stanton Dodson was the sole signatory on all the Debtors' investment accounts from which funds were misappropriated (¶ 50a);

  e.  Between his first involvement in the company in 2012 through March 2015, Mark Dunaway never had access to bank account statements for the Debtors or the related companies. He never reviewed any bank account statements before March 2015. (¶ 51b); and

  f.  There was no compensation paid to Mark Dunaway for the transfer of the Pembroke assets (¶ 69b).

[Original Bkr. Case D.I. 152-1]

21.     On September 14, 2015, Dahl filed his *Motion for Relief from the Automatic Stay to Continue Eviction Proceeding Related to Saltwater Injection And Surface Use Lease Dated September 12, 2013* (the "Dahl Motion") [Bkr. D.I. 150.]

22.     Pursuant to the Dahl Motion, prior to the Petition Date, on June 2, 2015, due to existing "events of default" under the Dahl Lease, Dahl commenced an eviction proceedings in the District Court of the State of North Dakota, County of McKenzie, Northwest Judicial District, Civil No. 27-2015-CV-00161 (the "Eviction Proceeding"). *Dahl Motion*, ¶ 13.

23.     The Dahl Motion and the Eviction Proceeding assert that Debtor Pembroke failed to pay certain vendors for materials supplied to the Leased Premises in violation of the Dahl

Lease. *Dahl Motion*, ¶ 14. As a result, five (5) mechanics' liens were recorded against the Leased Premises, totaling $1,173,119.74 (before application of interest and any other fees and costs to be asserted.) *Dahl Motion*, ¶ 14.

24.     The Dahl Motion further alleges that Debtor Pembroke at times failed to timely pay Monthly Rent on the Leased Premises but as of the Petition Date had cured the deficient Monthly Rent. *Dahl Motion*, ¶ 15, fns. 5-7.

25.     On December 18, 2015, the Debtors filed and served their *Motion of the Debtors for Order: (A) Approving Stalking Horse Bid, (B) Approving Credit Bids Under Section 363(k) of the Bankruptcy Code, (C) Approving Bidding Procedures in Connection with the Sale of Substantially All Assets of the Debtors, (D) Scheduling an Auction and Hearing to Consider the Sale of Assets, (E) Approving the Form and Manner of Notice Thereof; and (F) Authorizing and Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "Sale Motion") [Bkr. D.I. 143.]

26.     Per the Sale Motion, in October 2015, the Debtors decided to market their salt water disposal facility and associated machinery and equipment and pursue a transaction pursuant to one or more provisions of the Bankruptcy Code. *Sale Motion*, ¶ 13. After consultation with the Committee, the Debtors decided that a sale would provide the greatest value to and is in the best interests of the Debtors' estates. *Sale Motion*, ¶ 13.

27.     On January 14, 2016, the Bankruptcy Court entered its Order *(A) Approving Stalking Horse Bid, (B) Approving Credit Bids Under Section 363(k) of the Bankruptcy Code, (C) Approving Bidding Procedures in Connection with the Sale of Substantially All Assets of the Debtors, (D) Scheduling an Auction and Hearing to Consider the Sale of Assets, (E) Approving the Form and Manner of Notice Thereof; and (F) Authorizing and Approving the Assumption*

*and Assignment of Executory Contracts and Unexpired Leases* (the "Bidding Procedures Order") [Bkr. D.I. 184.]

28.    On February 10, 2016, the Bankruptcy Court entered its *Order (1) Authorizing and Approving the Sale of Substantially All of the Assets of the Debtors Free and Clear of Liens, Claims, Encumbrances and Other Interests; (2) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Therefore; and (3) Granting Related Relief* (the "Sale Order") [Bkr. D.I. 240.]

29.    The Sale Order provided, among other things, that the Purchase Price, as defined in the Sale Order, represents a fair and reasonable offer to purchase the Assets under the circumstances of the Chapter 11 case, and constitutes adequate and reasonably equivalent value for the Assets. *Sale Order*, ¶ H. The Sale Order also ordered that "[t]he sale of the Assets and the consideration provided under the Asset Purchase Agreement, including the Credit Bid Amount, are fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonable equivalent value and fair consideration under the Bankruptcy Code and any other applicable law." *Sale Order*, ¶ 4. The Sale Order is binding in all respects upon the Debtors, their estates, all creditors of the Debtors, all successors and assigns of any trustees appointed in the Debtors' Chapter 11 cases. *Sale Order*, ¶ 6.

30.    On December 16, 2016, the Debtors filed the Plan. [Bkr. D.I. 473].

31.    On February 23, 2017, the Court confirmed the Plan. [Bkr. D.I. 517.]

32.    On March 9, 2017, the Plan became effective. [See Bkr. D.I. 527.]

**The Adversary Complaint**

33.    On November 6, 2017, the Liquidation Trustee filed its Amended Complaint. [D.I. 121].

34.    The Amended Complaint, to the extent it alleges damages at all, alleges unspecified damages or "damages in an amount to be proven at trial" *Am.Compl.*, ¶¶ 88, 94,, 102, 109, 118, 133-34, 143, 156.

35.    The Amended Complaint alleges that from 2011 through the Petition Date, Defendants Stanton Dodson, Nicholas J. Vanderwey, and/or Dunaway solicited investments from various individuals and entities for Citadel-related[9] entities in connection with hydraulic fracturing operations in the Bakken Oil Fields in North Dakota. *Am.Compl.* ¶ 26. The derivative Complaint alleges further that "Dodson, Vanderwey and/or Dunaway" fraudulently induced the investors into financing various businesses owned by them and then using their control over those businesses to divert monies to themselves and other companies controlled by them. *Id*. ¶ 27.

36.    The Amended Complaint alleges that, in total, Dodson transferred more than $2,500,000 to or for the benefit of "himself and others related to him." *Id.* at ¶ 42(l), and (m). Absent are any specific allegations Dunaway initiated a transfer or transferred any money to himself or anyone else.

## The California Action

37.    On June 1, 2015, Leland Properties, LLC, Russel Miller, Jr., Todd Jorgensen, Peter Pifer, the Anthony & Angela Reed Family Trust, Blue Water Family Limited Partnership, Robert Frazier and the Grimsley Family Trust (collectively, "California Plaintiffs") filed a complaint ("California Action") against Citadel Energy Partners, LLC, Citadel Energy SWD Holdings, LLC, Stanton Dodson, Mark Dunaway, Chris Dopson, Louis Bridges, Alastair Smith, Carl Coward, Joseph Wilen, North Dakota Water Partners, LLC, North Dakota Water Solutions,

---

[9] "Citadel" is defined in the Complaint as the four Debtors. Compl. p. 1.

LP, Jonathon P. Reuben, Nicolas J. Vanderwey, Does 1-100, Fort Berthold Water Partners, LP and Citadel Watford City Disposal Partners, LP (collectively, "California Defendants") in the United States District Court for the Central District of California ("California Court") (Case No. 2:15-cv-04891-R-AJW).

38.     Eleven of the thirteen counts alleged in the California Action were asserted as derivative claims that assert claims which the Debtors could potentially themselves bring directly, including claims of fraud, breach of fiduciary duties and general tort. The remaining two claims in the California Action were claims for Securities Fraud and Fraud (the "Investor Only Claims").

39.     On or about August 23, 2016, Dunaway entered into a settlement agreement (the "California Settlement") with the California Plaintiffs. The California Settlement contained mutual releases between the California Plaintiffs and Dunaway, provided, however, that the releases contained in the California Settlement did not release any direct claims of the Debtors. The California Settlement did, however, release any claims that could be asserted, derivative or otherwise, on behalf of the California Defendants.

## APPLICABLE STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure, as incorporated into these proceedings through Rule 7008 of the Federal Rules of Bankruptcy Procedure, requires "a short and plain statement of the claim showing the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim for relief on its face. *Id*.

In evaluating a Rule 12(b)(6) motion, the Court must engage in a two-step analysis. *See id*. at 679. First, the Court should separate the factual and legal elements of a claim, accepting any well-pleaded facts as true, but disregarding any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the Court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 210-11 (quoting *Iqbal*, 556 U.S. at 679.) Despite the liberal notice pleading standards of Rule 8, conclusory allegations will not save a complaint from dismissal. *Iqbal*, 556 U.S. at 678-79.

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("the stringent pleading requirements of Rule 9(b)"). Conclusory allegations of fraud are insufficient. *Moore v. Kayport Package Express, Inc*., 885 F.2d 531, 540 (9th Cir. 1989). The plaintiff must plead "the who, what, when, where and how of the events at issue." *See United States ex rel. Moore & Co., P.A., v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307-308 (3d Cir. 2016); *see also Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Although generally, for a motion to dismiss the Court only considers the allegations in the complaint, however, "[t]he Court may also consider documents attached as exhibits to the Complaint and any documents incorporated into the Complaint by reference. *In re Fruehauf Trailer Corp*., 250 B.R. 168, 183 (Bankr.D.Del.2000) (*citing PBGC v. White*, 998 F.2d 1192,

1196 (3d Cir.1993)). "[I]f the allegations of [the] complaint are contradicted by documents made part thereof, the document controls and the Court need not accept as true allegations of the complaint." *Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*, 329 B.R. 438, 442 (Bankr.D.Del.2005). *See also Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 649 (W.D.Pa. 1999) ("In the event of a factual discrepancy between the pleadings and the attached exhibit, the exhibit controls." (citations omitted))." *Conex Holdings*, 514 B.R. at 450, n. 44.

The Court may also consider matters of public record in ruling on a motion to dismiss, it may also consider documents that are integral to the claims in the complaint. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

## LEGAL ARGUMENT

**I.     The Fiduciary Duty Claims Should Be Dismissed as the CWCDP Partnership Agreement Waived Any Fiduciary Duties.**

In the Amended Complaint, the Fiduciary Duty Claims must be dismissed as to Dunaway because the CWCDP Partnership Agreement provides that it does not create or impose any fiduciary duties on any of the Partners or their respective Affiliates (as defined therein.) The Amended Complaint defines "Citadel" as the Debtors, collectively, and assert claims on behalf of "Citadel" generally. This makes the Amended Complaint fatally unclear.[10] Nonetheless, the Fiduciary Duty Claims relate solely to Debtor Citadel Watford. There are both explicit and contextual reasons for this.

---

[10] See Section II, *infra*.

As an initial matter, the Amended Complaint, particularly the facts alleged therein, is a modified version of the California Action, which asserted derivative claims on behalf of two entities: Citadel Watford City Disposal Partners, LP and Fort Berthold Water Partners, LP. Count I of the Amended Complaint clearly states: "Upon the formation of Citadel in September 2013, the Citadel Partners installed themselves as the managing general partners, managing members and/or members of Citadel." *Am.Compl.*, ¶ 81. As set forth in the California Action and in these Cases, only Debtor Citadel Watford was formed in September 2013.

The California Action alleges, among other things, that Dodson, Vanderway, and/or Dunaway created various shell companies that were used to perpetuate an interstate investment conspiracy. Many of these allegations are due to the fact that the Citadel Watford investors were unaware of the intended, and perhaps byzantine, corporate structure regarding the Citadel enterprise. As such, the "shell companies" as identified in the California Action, included, but were not limited to, Citadel Energy Services, LLC (a Debtor), Pembroke Fields, LLC (a Debtor), Citadel Energy SWD Holdings (a Debtor), Citadel Watford City Water Disposal Partners, LP (a Debtor). The Committee, later the Liquidating Trustee, removed the Debtors' names from the list of shell companies in the Complaint and Amended Complaint, but copied much of the rest of the allegations. To wit, each non-conclusory allegation in Count I (Breach of Fiduciary Duty) is taken directly from the California Action.

Furthermore, with the exception of subparagraphs l and m of the defined "Actions", each of the Actions, Concealing Actions, and Citadel Fraudulent Representations are identical as those asserted in the California Action. They are clearly asserted from the context of investors in Citadel Watford and Fort Berthold Water Partners, L.P. (a non-debtor,) in many cases referencing actions related solely to investors' rights. Only Citadel Watford had "investors."

Debtor Citadel Watford and its investors were the fountainhead of the collective Debtor funds. It stands to reason that Dodson's mismanagement and theft, and all of the Fiduciary Duty Claims, arise from the perspective of the Citadel Watford investors, derivatively, and only Citadel Watford directly.

As explained in paragraphs 2 through 6 of the factual background above, the CWCDP Partnership Agreement, duly-executed and acknowledged repeatedly in these Bankruptcy Cases, waives the Fiduciary Duty Claims. Section 10.01(b) of the CWCDP Partnership Agreement eliminates these duties specifically. *Exhibit A*, §10.01(b). The CWCDP Partnership Agreement vests sole control of Citadel Watford in Citadel Energy SWD Holdings, LLC, its General Partner, and Stanford Dodson as manager of Citadel SWD. The Amended Complaint contains no allegations that Dodson delegated any powers to Dunaway, let alone that Dunaway maintained any authority to undertake the Actions and Concealing Actions. And to the extent they were delegated, Dunaway is insulated from any breach of fiduciary duty claims. As such, the Fiduciary Duty Claims must be dismissed.[11]

## II.    The Fraud Claims Should be Dismissed for Failure to State Claims with Requisite Particularity as Required by Fed. R. Civ. P. 9(b)

The Fraud Claims in the Amended Complaint generally allege that the Actions, Concealing Actions, Citadel Fraudulent Representations, and additional investor-related claims give rise to a claim for fraud against the Citadel Partners, including Dunaway. The Fraud Claims are specific fraud causes of action and as such must be pled with the requisite Rule 9(b) particularity.

---

[11] To the extent the Liquidation Trustee argues that the Fiduciary Duty Claims arise from the non-Citadel Watford Debtors, the Liquidation Trustee is required to plead with specificity as to which Debtors these duties are owed, as set forth below.

To satisfy Fed.R.Civ.P. 9(b), a plaintiff must plead: (1) a specific false representation [or omission] of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage. *Brinkmeier v. BIC Corp.*, 2010 WL 3360568 *5 (D.Del. Aug. 25, 2010)(citing *In re Suprema Specialties, Inc. Securities Litigation*, 438, F.3d 256, 270 (3d Cir.2006)).

Each of these must be plead with the requisite particularity. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b); *see also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Conclusory allegations of fraud are insufficient. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). The Plaintiff must plead "the who, what, when, where and how of the events at issue." *See United States ex rel. Moore & Co., P.A., v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307-308 (3d Cir. 2016); *see also Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

**A. Failure to Plead With Particularity as to Each Defendant**

As an initial matter, the allegations in the Fraud Claims fail to particularly allege Dunaway as a perpetrator of any fraud or fraudulent actions. Plaintiff's conclusory allegations of fraud are grouped by various sets of defendants, with Dunaway grouped together in some manner with ten other individual and/or entity defendants under five defined terms:

i.      **Citadel Partners**: Defendants Citadel Energy Partners, LLC, Dodson, Dunaway, Vanderwey, Temple, Holoman, and Bridges;

ii.      **ND Water Partners**: Defendants Dunaway, Bridges, Smith, Coward, and ND Water Partners, LLC;

iii.      **Defendants Dodson, Vanderwey and/or Dunaway**;

iv.      **Dodson and Dunaway**. See Am.Compl. ¶¶ 33, 34, 42, 59, and 72; and

v.      **Defendants**, generally.

The pleading requirements of Federal Rules 8 and 9 must be met as to each defendant. *Yost v. Nationstar Mortgage, LLC*, 2012 WL 4288590, *3 (E.D. Cal. 2013). Federal Rule 9(b) does not allow a complaint to "merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011) (citation and quotations omitted). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identify the role of each defendant in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 764-65 (9th Cir. 2007).

Liability is personal and each defendant is entitled to know what he or she did that is asserted to be wrongful. *Conex,* 514 B.R. at 413-414 (citing *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir.2013).) In *Conex*, this Court determined that "the Trustee lumps all of the Individual Defendants together as Officers and Directors … without supplying specific facts as to each defendant's wrongdoing." *Conex,* 514 B.R. at 413-414.  The *Conex* court held the "conclusory statements" "failed to satisfy the *Twombly* and *Iqbal* pleading standard," and "this is not a close question." *Id*.  *Conex Holdings* is directly on point in this case, and dispositive.[12]

The Amended Complaint does not identify any Actions or Concealing Actions specifically undertaken by Dunaway and therefore violates the particularity requirement as to each individual defendant.

---

[12] It should be noted that the holding in *Conex* regarded fiduciary duty causes of action and required pleading as to individual defendants under *Iqbal* and *Twombley* regardless of the heightened pleading standards under Rule 9.

**B. Failure to Plead with Particularity as to the Actions and Concealing Actions**

In addition to the Liquidation Trustee's failure to plead the "who" with particularity, the Amended Complaint also generally fails to adequately allege the "what, when, where and how of the events." *See United States v. Majestic Blue Fisheries, LLC*, 812 F.3d at 307-308. The Fraud Claims rely on broad, vague pronouncements related to the Actions and the Concealing Actions. The Liquidating Trustee makes no particularized allegations as to which of the Actions and/or Concealing Actions Dunaway undertook, or if Dunaway was involved at all. The Actions and Concealing Actions make little sense in the context of the Debtors and without further particularized pleading, Dunaway is deprived of notice as to what precisely is being claimed. In fact, because the Amended Complaint is based upon the California Action in which the California Plaintiffs were unaware of the relationship among the Debtors, it is unclear if the Liquidating Trustee is making any particularized allegations that monies transferred among the Debtors were included or inappropriate. The corollary to that is that Liquidation Trustee fails to identify any fraudulent transfers made to non-Debtor entities, except those allegations related only to Dodson's theft. A brief summary of why the allegations fail to allege with sufficient particularity is provided below:

### THE ACTIONS

1. **"Actions performed by all or certain of the Citadel Partners"** – *Am. Compl.* ¶42—the prefatory language of the defined Actions alone should cause the Court concern as the Liquidation Trustee provides a litany of non-specific actions performed by non-particularized persons.

2. **Capitalizing "unrelated entities"** -- *Am.Compl.* ¶42(c): Fails to allege with particularity which of the "unrelated" entities Dunaway capitalized using money of the investors. *See Am.Compl.* ¶42(c). This is particularly important as these allegations in the Amended Complaint are copied from the California Action in which the plaintiffs considered each of the non-Citadel Watford debtors as an "unrelated entity" and, among other things, included Debtors Citadel Energy Services, LLC, Pembroke Fields, LLC, and Citadel Energy

SWD Holdings in the definition of the "Citadel General Partners" (the original defined term as filed by the Committee.) As such, without particularized allegations, the Liquidating Trustee appears to be alleging that monies transferred among themselves is fraudulent without any particularity;

3. **Diversion of Money Among "Shell Companies":** *Am.Compl.* ¶42(d) - (f); Same defects as sub-paragraph 2 above. The Liquidating Trustee should at the very least be required to identify to which "shell companies" money was diverted and Dunaway's involvement or culpability in these Actions;

4. **Diversion of business opportunities:** *Am. Compl.* ¶42(g) – The only business opportunity identified with particularity relates to water well opportunities (unrelated to Debtors' business) of Fort Berthold Water Partners, L.P. (a nominal defendant in the California Action and unrelated to Citadel Watford). The Liquidating Trustee should at the very least be required to identify a single "opportunity" diverted from the Debtors and Dunaway's involvement in such a diversion;

5. **Commingling of Assets:** *Am.Compl.* ¶42(h)-(i); Same as sub-paragraph 2 and 3 above. Liquidating Trustee fails to identify what assets of Citadel were commingled with "Citadel-related" entities. Liquidating Trustee fails to particularly allege any commingling by or for the benefit of Dunaway. The Liquidating Trustee fails to allege any commingling with non-Debtor entities.

## THE CONCEALING ACTIONS

With regard to the Concealing Actions (*Am.Compl.* ¶43,) the Amended Complaint is silent as to any actions or involvement of Dunaway, instead relying on the broad "Citadel Partners" definition. The Liquidation Trustee does not specifically allege that Dunaway, at any time: removed, falsified, or destroyed books and records; falsified tax returns; opened bank statements to which Dodson had sole access; hired any persons or employees, lied to investors as to Debtors operations, or refused to answer any questions of the investors.

## THE CITADEL FRAUDULENT REPRESENTATIONS

With regard to the alleged fraudulent representations made to the Citadel investors, the Amended Complaint fails to plead with particularity any allegations of fraud against Dunaway.

The investor-related claims are defined as the "Citadel Fraudulent Representation." *See Am.Comp*l. ¶33.

Additional allegations in support of the Fraud Claims include:

- Representations that all money provided to Citadel would be used for its salt water disposal well businesses;

- That the investors' interests in Citadel would be perfected;

- The representation that Citadel would be operated separately and independently of the Citadel Partners and their other shell companies; and that the Citadel Partners would not conduct operations of Citadel in a manner akin to the Actions and Concealing Actions.

As an initial matter, to successfully plead a fraud claim, the allegedly defrauded party must have sustained damages as a result of the other party's action. *Cornell Glasgow, LLC v. La Grange Properties, LLC*, 2012 WL 2106945, at *8 (Del.Super. 2012). Failure to identify specific damages caused by the alleged fraud is grounds for dismissal of claims alleging fraud. *See ITW Global Investments Inc. v. American Industrial Partners Capital Fund IV, L.P., et al.*, 2015 WL 3970908, *5 (Del.Super. 2015). It is unclear as to the Liquidation Trustee's theory of damages suffered by the Debtors, and the extent of those damages, with regard to statements made to the investors. The Debtors did not suffer damages from representations made to investors.

In fact, Count IV (Fraud) and Count V (Fraudulent Concealment) only set forth potential fraud claims able to be asserted by the investors of Citadel Watford.[13] To the extent the "Citadel Partners" made any misrepresentations to the investors, the Debtors, as the recipient of the investment funds, would have been the beneficiaries of these misrepresentations in the form of investment funds.

---

[13] The claims of the investors themselves have been released via the California Settlement.

Furthermore, the Liquidation Trustee must allege that the person making the allegedly false statement knew of its falsity. *Brinkmeier v. BIC Corp.*, 2010 WL 3360568 *5 (D.Del. 2010). While knowledge may be pled generally, when a claimant pleads a claim of fraud that charges that the defendants knew something, it must allege sufficient facts from which it can reasonably be inferred that this "something" was knowable and that the defendants were in a position to know it. *See Albert v. Alex Brown Mgmt. Services, Inc.*, 2005 WL 2130607, at *11 (Del.Ch. 2005). While the Court can interpret statements of future intent to perform as the basis for a fraud claim, it will do so only if the plaintiff alleges "particularized facts that allow the Court to infer that, at the time the promise was made, the speaker had no intention of keeping it. *Khushaim v. Tullow Inc.*, 2016 WL 3594752, *6 (Del.Super. 2016); *Iotex Commons, Inc. v. Defries*, 1998 WL 914265, at *4 (Del.Ch. 1998).

Furthermore, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). No such information is provided by the Liquidating Trustee in the Amended Complaint.

The Amended Complaint fails to allege with particularity any misrepresentations made by Dunaway and also fails to allege any facts from which we can infer Dunaway knew or should have known they were false. The Amended Complaint does not allege with particularity which of the Citadel Fraudulent Representations were made by Dunaway, and when they were made.

The Fraud Claims are so devoid of allegations of who, what, where, when and how, and the damages associated with those representations, Dunaway cannot be placed on notice of the fraud of which he is being accused. The heightened pleading requirements of Fed.R.Civ.P. 9(b) exists for this reason and the Fraud Claims should be dismissed accordingly.

**III.     The Fraudulent Transfer Claims Must be Dismissed**

Counts VI and VII of the Amended Complaint seeks the avoidance and turnover of "Transfers" fraudulently transferred in amounts unknown and to entities unidentified under theories of actual fraud and constructive fraud.

The fraudulent "Transfers" are identified solely as "using monies to pay the expenses of or to provide capital to entities formed by Dodson, Vanderwey, and/or Dunaway. *Am.Compl.* ¶121. These entities are not identified and Dunaway's ownership or beneficial relationship to said entities are not provided nor alleged.[14]

Allegations of fraud under Section 548 of the Bankruptcy Code must be pled with particularity. *See In re Elrod Holdings Corp.*, 412 B.R. 700, 710-11 (Bankr.Del. 2010). Fed. R. Bankr. P. 7009.

In the context of causes of action asserted under 11 U.S.C. § 548, merely reciting the elements of Section 548 is not sufficient to withstand a motion to dismiss under Fed. R. Civ. P. 12(b) in the absence of other facts. *See In re Global Link Telecom Corp.*, 327 B.R. 711, 718 (Bankr. D.Del. 2005) (dismissal was warranted when the only facts offered by the trustee plaintiff were two lists of transfers made to the defendant. The trustee presented no information on the debtors' financial status or the value of what was received in exchange for the allegedly fraudulent transfers.)

In this case, the Liquidation Trustee has not even alleged specific transfers, let alone any transfers for which Dunaway was the transferee. In fact, the Debtors have already acknowledged that Dunaway was not compensated for the transfer of the Pembroke assets and that none of the

---

[14] The circumstances regarding the Dahl Lease are also added as a Transfer as to ND Water Partners. The Dahl Lease is addressed *infra* in Section V.

bank records indicate that Dunaway improperly received any funds from the Debtors' estates. *See Pre-Trial Admissions*, ¶¶ 45b and 69b.[15]

In its bare recitation of the statutory requirements of Sections 548 and 550, the Liquidation Trustee does not allege any badges of fraud as required to show "actual intent to hinder, delay or defraud" on the part of the Debtors. Nor does the Amended Complaint show any transfers received by Dunaway as the mediate or intermediate transferee. Dunaway is entitled to the identification of any Transfers for which he was the transferee for which the Liquidation Trustee seeks to avoid. The Amended Complaint completely fails in this regard.

## IV.   All Claims Against Dunaway Are Subject to Fed.R.Civ.P. 9(b) Particularity and Must Be Dismissed

The Third Circuit has held that in instances where fraud is not a necessary element of a claim, but the claims do "sound in fraud," the claims must be pled with particularity under Rule 9(b). *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996). This would include any claims for misrepresentations, unjust enrichment, and other tort claims. *See e.g. Travelers Indemnity Company et al v. Cephalon, Inc., et al.*, 2015 WL 4717929 , fn. 3 (3d Cir. 2015) ("all of Plaintiffs' claims alleging fraudulent activity—i.e., Plaintiffs' claims for intentional and negligent misrepresentation, unjust enrichment and an injunction—must be pled with sufficient particularity under Rule 9(b)").

---

[15] "Voluntary and knowing concessions of fact made by a party during judicial proceedings, such as statements contained in pleadings, stipulations, depositions, or testimony, responses to requests for admissions and counsel's statements to the court are termed "judicial admissions." *Merritt v. United Parcel Service*, 856 A.2d 1196, 1201 (Del. 2008)." Delaware Trial Handbook § 17:5. JUDICIAL ADMISSIONS.  "Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *American Title Insurance Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).  Where a party "tried to benefit" from a statement in a brief, that statement can be properly considered as a judicial admission. *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003).

All claims in the Amended Complaint arise from an alleged fraudulent scheme by Dodson. The Fraud Claims in the Amended Complaint include all activities from November 2012 through 2015, including the Actions, Concealing Actions, the Citadel Fraudulent Representations and other investor-related statements. The Fiduciary Duty Claims and the Tort Claims all arise from these same actions, and fraud is either a) directly alleged (Count I, ¶ 85; Count IX, ¶¶ 137-38); b) referenced by the same fraudulent Actions or Concealing Actions (Count I, ¶ 85; Count X, ¶149) or c) simply referenced generally all "actions" and previously-referenced facts. Put simply, each of the Liquidation Trustee's allegations sound in fraud and must be pled with particularity.

As such, all claims against Dunaway must be dismissed under Rule 9(b) for failure to plead with the requisite particularity.

**V.    The Dahl Lease Was an Asset of The Debtors on the Petition Date and Was Assigned for Fair and Reasonably Equivalent Value per the Sale Order.**

In the Amended Complaint, the Liquidation Trustee includes issues related to the Dahl Lease as part of the defined term Actions  and asserts damages from the purported or attempted assignment of the Dahl Lease as part of the damages permeating the Fiduciary Duty Claims, Fraud Claims, and general Tort Claims against Dunaway. *Am. Compl.* ¶¶ 42(k), 50, 62-63, 65, 70, and 85-87.

To support the Fiduciary Duty Claims, Fraud Claims, and general Tort Claims, the Liquidation Trustee has changed the allegations regarding the Dahl Lease from "the irreversible loss and/or forfeiture of the Dahl Lease" (*Original Compl.* ¶ 53), to a new allegation that the Debtors received a "depressed value" for the Dahl Lease. *Am. Compl.* ¶¶ 70 and 86.

The Liquidation Trustee's "depressed value" allegation is contradicted by the Debtors' own representations and the language of the Sale Order, and cannot be collaterally attacked at this stage.

### A.      The Dahl Lease was a Part of the Estates' Assets on the Petition Date.

The Liquidation Trustee asserts the ND Water General Partners "attempted to transfer the assets of Citadel, including the Dahl Lease, without authorization; engaged in a course of action which resulted in receiving a depressed value for the Dahl Lease …" *Am. Compl.* ¶ 86.  The Dahl Lease was not assigned and any attempted assignment was meaningless.

The Liquidation Trustee specifically alleges that the "fraudulent transfers included, but were not limited to, assigning or causing to have assigned the Dahl Lease." *Am. Compl.* ¶ 122.

The records in the Debtors' Cases reveal the Dahl Lease was a part of the Debtors' Assets (defined *infra*) on the Petition Date. As evidenced by the Debtor Pembroke Fields, LLC's ("Pembroke") Schedule G - Executory Contracts and Unexpired Leases ("Pembroke Schedule G"), which lists the Dahl Lease as an executory contract of the Estates. There can be no dispute as to whether the Dahl Lease was part of the Debtors' estates and therefore there can be no "cloud" on the title in that regard.

Further, as set forth in the Debtors' Stay Objection, any pre-petition assignment, attempted or otherwise, was never effective. *Stay Objection*, ¶ 27. The Dahl Lease could not be assigned. *Stay Objection*, ¶ 27. The pieces of paper on which the attempted assignment was written on were, essentially, worthless. *Stay Objection*, ¶ 27. As soon as the Debtors realized the error, they took steps necessary to correct the actions of their limited partners. *Stay Objection*, ¶ 27. The Dahl Lease was never transferred, and the Debtors did not breach the assignment provision of the Dahl Lease. *Stay Objection*, ¶ 27.

The Debtors asserted the "[l]ease was never transferred" statement to the Court to defeat a landlord, thus, the Debtors and Liquidation Trustee are judicially estopped from seeking to benefit in a lawsuit against insiders by making an exact opposite statement the Dahl Lease was a fraudulent transfer and the transfer a breach of fiduciary duty.  "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

The Liquidation Trustee is bound by the Debtors' judicial admission to the Court that the "[l]ease was never transferred". *Id.*  "[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the district court." *American Title Insurance Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988).

As set forth immediately above, Debtor Pembroke was the lessee under the Dahl Lease and the Dahl Lease was property of the Estates as of the Petition Date. [Bkr. D.I. 12.] The Liquidating Trustee is estopped from including the Dahl Lease as a "Transfer" for the purpose of Count VI, and there can be no damages associated with a transfer that did not occur.

### B.      The Dahl Lease was Assigned for Fair and Reasonably Equivalent Value

The Liquidation Trustee's "depressed value" argument as a basis of damages for the Dahl Lease, is based on Dahl's numerous post-petition filings and actions in the Debtors' Cases.  *See Am. Compl.* ¶¶ 67-69. Included in these allegations is that the actions by ND Water Partners created a "cloud" on the title to the Debtors' interest in the Dahl Lease and that Dahl was able to exert control over the sale process to the Debtors' detriment. These allegations of damages are illusory and contradicted by the Sale Order in these Cases. The post-petition assignment of the

Dahl Lease has already been judicially determined to be for reasonably equivalent value and for fair value.

As an initial matter, Dahl would be entitled to cure of any defaults, including liens against the leasehold and back rent, as well as adequate assurance of future performance, prior to the assumption and assignment of the Dahl Lease under any circumstances as a matter of law. *See* 11 U.S.C. 365(b). This is non-controversial. There are no allegations that Dahl unreasonably withheld the assignment to the ultimate purchaser or any other party. Furthermore, by conducting the assignment of the Dahl Lease through the Bankruptcy Court and the Sale Order, the Debtors effectively eliminated any "cloud" on the title to the Dahl Lease, contrary to the Liquidation Trustee's contention otherwise.

On February 10, 2016, this Court entered the Sale Order approving the sale of substantially all of the Debtors' Assets, which provided for the assumption and assignment of the Dahl Lease to the asset purchaser. [*See* Bkr. D.I. 179.]  The Sale Order, including the assignment of the Dahl Lease by the Debtors, was for "reasonably equivalent value" and as "a reasonable and fair exchange of consideration" between the Debtors and the asset purchaser. *Sale Order*, ¶¶ 4 and P.

Furthermore, the Bidding Procedures Order established an auction process for the Debtors Assets.  The Delaware Supreme Court has endorsed reliance on the deal price in arm's-length cases with a robust sale process as often "the best evidence of fair value".  *DFC Global Corp. v. Muirfield Value Partners, L.P.*, 2017 WL 3261190 (Del.Supr. 2017).  Thus, the Bidding Procedures Order resulting in the Sale Order allowed the Debtors to "maximize the value" for the Assets, including the Dahl Lease. [*See* D.I. 184, ¶ E, p. 3.]

The Court in the Sale Order has already accepted the Debtors' judicial admission from the Sale Motion that the Debtors received "for all purposes" "reasonably equivalent value and fair consideration" for the Debtors' Assets, including the Dahl Lease. *Sale Order*, ¶ 4. The Sale Order is binding on the Liquidation Trustee. *Sale Order*, ¶6. The Liquidation Trustee is attempting to take another bite of the apple after the bankruptcy auction and sale process, and under the Liquidation Trustee's theory, every sale in bankruptcy would be subject to collateral attack.

The Court should therefore determine and take notice that the Liquidation Trustee is estopped from taking inconsistent "depressed value" and fraudulent transfer positions against Dunaway which contradict the Court's Sale Order that the assignment of the Dahl Lease, and the sale of Assets, were for "reasonably equivalent value". *In re Network Access Solutions Corp.,* 330 B.R. 67, 77-78 (Bankr. D.Del. 2005) (holding committee judicially estopped from attacking transfers addressed in assumed agreements when committee supported assumption); *see also In re Superior Crewboats, Inc.*, 374 F.3d 330, 335-36 (5th Cir. 2004). As such, there can be no damages asserted by the Liquidation Trustee vis a vis the Dahl Lease, including and depressed value or "cloud" on the title.

## **CONCLUSION**

Wherefore, for the reasons set forth above, Mark Dunaway respectfully requests that the Bankruptcy Court enter an order substantially similar to the Proposed Order submitted with the Motion to Dismiss, and dismiss with prejudice Counts I through X of the Amended Complaint as to Dunaway.

**COOCH AND TAYLOR, P.A.**

*/s/R. Grant Dick IV*

Robert W. Pedigo (DE No. 4047)
R. Grant Dick, IV (DE No. 5123)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
Telephone: 302.984.3800
Facsimile: 302.984.3939
rpedigo@coochtaylor.com
gdick@coochtaylor.com

*Counsel for Defendant Mark Dunaway*