## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Citadel Watford City Disposal Partners, L.P., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11323 (KJC)<br>(Jointly Administered) |
| Gavin/Solmonese LLC, Liquidation Trustee for the Citadel Creditors' Grantor Trust, successor to Citadel Watford City Disposal Partners, L.P., et al.,<br><br>Plaintiff,<br>v.<br><br>Citadel Energy Partners, LLC., et al.,<br><br>Defendants. | Adv. Proc. No. 17-50024 (KJC)<br>(Re: D.I. 143, 146) |

## OPINION

**BY:   KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

Before the Court are motions filed by Defendant Mark Dunaway[2] and Defendants Carl Coward, Alastair Smith, and North Dakota Water Partners, LLC[3] to dismiss the amended complaint filed by Gavin/Solmonese LLC, as liquidation trustee for the Citadel Creditors' Grantor Trust (the "Liquidation Trustee"), alleging breach of fiduciary duty, fraud and concealment, among other claims. For the reasons set forth below, the motions to dismiss will be denied.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Citadel Energy Services, LLC (7762); Pembroke Fields, LLC (0341); Citadel Energy SWD Holdings. LLC (5266) and Citadel Watford City Disposal Partners, LP (1520). The address for each Debtor is P.O. Box 2127, Watford City, North Dakota 58824.
[2] See Adv. D.I. 143, 144.
[3] See Adv. D.I 146, 147.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(a). Counts 6, 7 and 14 of the Amended Complaint are core proceedings pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A), (E) and (H). The remaining counts are likely non-core.

The Bankruptcy Court may enter an order on a motion to dismiss even if the matter is non-core or it has no authority to enter a final order on the merits.[4] To the extent parties do not agree that this Court may enter a final order for non-core related proceedings, or if any court determines that a final order or judgment in this matter by this Court is not consistent with Article III of the United States Constitution, then this Opinion and Order are submitted as proposed findings of fact and conclusions of law in accordance with the District Court's Amended Standing Order of Reference dated February 29, 2012.[5]

## BACKGROUND

Citadel Watford City Disposal Partners, LP, Citadel Energy Services LLC, Pembroke Fields, LLC, and Citadel Energy SWD Holdings, LLC (collectively, the "Debtors") and their affiliated entities provided a range of fluid management services to oil and gas producers. On June 19, 2015, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and the cases have been jointly administered.[6] On June 20, 2015, the Office of the United States

---

[4] *In re DSI Renal Holdings, LLC*, 574 B.R. 446, 455 (Bankr. D. Del. 2017). *See Burtch v. Owlstone, Inc. (In re Advance Nanotech, Inc.)*, 2014 WL 1320145, at *2 (Bankr. D. Del. Apr. 2, 2014) (citing *O'Toole v. McTaggart (In re Trinsum Group, Inc.)*, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012)) ("After *Stern v. Marshall*, the ability of bankruptcy judges to enter interlocutory orders in proceedings ... has been reaffirmed ...."); *see also Boyd v. King Par, LLC*, Case No. 1:11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment ... does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions.").
[5] *In re DSI Renal Holdings, LLC*, 574 B.R at 455 (citing *Zazzali v. 1031 Exch. Group (In re DBSI, Inc.)*, 467 B.R. 767, 775–76 (Bankr. D. Del. 2012)).
[6] *See* D.I. 8.

2

Trustee appointed an official committee of unsecured creditors (the "Committee"). On February 6, 2017, the Committee commenced this adversary proceeding, asserting claims against a number of defendants.[7] The defendants who filed these motions to dismiss are Carl Coward, Alistair Smith, and North Dakota Water Partners, LLC (collectively, the "C& S Defendants") and Mark Dunaway ("Dunaway") (collectively, the C&S Defendants and Dunaway are referred to as the "Movants").[8]

On May 8, 2017, the Clerk entered default judgments against the C&S Defendants and Dunaway.[9] On September 26, 2017, after briefing and oral argument, the Court entered an order vacating the entry of the default judgment against Dunaway.[10] On December 27, 2017, after oral argument and briefing, the Court entered an order vacating the entry of the default judgment against the C & S Defendants.[11] Meanwhile, the Liquidating Trustee sought leave to amend the complaint, which the Court granted.[12] The amended complaint (the "Amended Complaint") was filed on November 13, 2017, and the stipulated response deadline was December 8, 2017.[13]

---

[7] *See* Adv. D.I. 1. The claims allege breach of fiduciary duty, gross mismanagement, waste, fraud, fraudulent concealment, conversion, and other causes of action relating to, among other things, fraudulent investment practices, commingling and self-dealing, conversion of business assets, unauthorized assignment of the Debtors' assets, and the loss of a lease central to the Debtors' business. The Adversary proceeding names fifteen individual and business entities as defendants. However, this opinion addresses only the issues raised by the Movants now before me.

[8] The defendants are grouped together under several key terms defined in the Amended Complaint: the "Citadel Partners" are Citadel Energy Partners, LLC, Dodson, Dunaway, Vanderwey, Temple, Holoman and Bridges; and the "ND Water Partners" are Dunaway, Bridges, Smith, Coward and ND Water Partners, LLC. The Amended Complaint refers to Dunaway as an individual and as a member of the Citadel Partners. It also refers to Coward and Smith individually, and as members of ND Water Partners. Stanton Dodson ("Dodson") and Nicolas J Vanderwey ("Vanderwey") were managing partners and/or members/managing members of the Debtors but did not file motions to dismiss.

[9] Parties dispute whether an agreement was made to extend time to respond to the Complaint. *See* Adv. D.I. 51, 52, 55, 68.

[10] *See* Adv. D.I. 113.

[11] *See* Adv. D.I. 155.

[12] *See* Adv. D.I. 116, 120.

[13] *See* Adv. D.I. 121, 140.

Briefing on the motions to dismiss was completed on January 31, 2018.[14] By Order dated February 2, 2018, I allowed discovery to go forward while the motions to dismiss were pending.[15]

**The Alleged Fraudulent Acts of Defendants**

The Amended Complaint contains 79 paragraphs, detailing the alleged acts of the defendants before asserting 14 counts against them. The Amended Complaint contains a total of 187 paragraphs. The following is a brief description of the pertinent allegations.

The Debtors operated a network of freshwater depots, saltwater disposal wells, solids control facilities, and planned landfills. The Amended Complaint alleges that Dunaway, along with Dodson and Vanderwey, fraudulently solicited investments for various business ventures supportive of and dependent upon the shale oil-drilling industry in the Bakken Oil Field in North Dakota.[16] Dunaway, Dodson and Vanderwey allegedly used the Debtors, as well as shell companies they created, to operate as the alter egos of the Citadel Partners.[17] The Amended Complaint alleges that the Citadel Partners operated the Debtors and other entities they controlled without regard to corporate formalities and in breach of fiduciary duties owed to the Debtors.[18] The partners failed to pay debts, commingled assets, failed to comply with contract terms, and failed to put in place financial oversight systems resulting in $2.5 million accessed illegally.[19] As a result of these actions, and inactions, the Debtors sought chapter 11 relief in June 2015.[20]

---

[14] *See* Adv. D.I. 174, 175.
[15] *See* Adv. D.I. 176. The parties have since engaged in disputes concerning pre-trial scheduling. I will dispose of those disputes by separate order.
[16] Amended Complaint ¶ 26.
[17] Amended Complaint ¶ 28
[18] Amended Complaint ¶ 42.
[19] *Id.*
[20] Amended Complaint ¶ 45.

4

In October 2013, Citadel Watford was created, with its stated purpose to develop and operate a saltwater disposal well facility servicing Bakken Oil Shale of North Dakota.[21] The Amended Complaint alleges that the infrastructure assets of the Citadel Watford saltwater disposal project were owned by Pembroke SWD, LLC, which is owned and controlled by Dunaway.[22] On September 12, 2013, Pembroke entered into a lease with landowner Nathan Dahl (the "Dahl Lease").[23] This lease contained a provision prohibiting assignment by the lessee.[24]

In July 2014, Dodson assigned 9.713% of Citadel Energy's remaining 44.5% interest in Citadel Watford to Bakken Investments, LLC ("Bakken Investments"), an entity owned by Coward and Smith.[25] This assignment created an alleged *de facto* management relationship between Coward and Smith and the Debtors.[26] In March 2015, Dunaway, Coward and Smith, purported to "oust" Dodson as controlling partner of the Debtors.[27] In April 2015, Coward and Smith sent a letter to certain limited partners alleging that they, along with Dunaway, had just discovered Dodson's "Actions" and that his ouster was due to this discovery.[28]

In May 2014, a tornado struck the well and facilities covered under the Dahl Lease.[29] Contractors had not been paid up to that time, and the damage costs exceeded $600,000.[30] The Amended Complaint alleges that the resulting insurance proceeds due to the Debtors were intercepted and used wrongfully by one or more of the Citadel Partners.[31] This resulted in a

---

[21] Amended Complaint ¶ 31.
[22] Amended Complaint ¶ 37.
[23] Amended Complaint ¶ 39.
[24] *Id.*
[25] Amended Complaint ¶ 46.
[26] Amended Complaint ¶ 47.
[27] Amended Complaint ¶ 49.
[28] Amended Complaint ¶ 50. The Amended Complaint defines the "Actions" in detail in ¶ 42.
[29] Amended Complaint ¶ 51.
[30] Amended Complaint ¶ 52, 54.
[31] Amended Complaint ¶ 56.

mechanics lien clouding the title of the property subject to the Dahl Lease.[32] In April 2015, as a result of a falling out between partners, Dunaway was alleged to have transferred all assets of Pembroke to a new entity called ND Water Partners, LLC.[33] Given that the Dahl Lease was expressly unassignable, Dahl filed a notice of intent to evict, and later a lawsuit to terminate the Dahl Lease.[34] This lawsuit continued during the bankruptcy proceedings, and Dahl objected to the assumption and assignment of the lease, the cure amount, and the sale of substantially all of the Debtors' assets.[35] The complaint alleges that Dahl's leverage, resulting from the defendants' improper actions, caused the Debtors' assets to be sold at a depressed value.[36]

The Amended Complaint contains fourteen counts against various defendants. Counts 1-3 allege derivative claims for breach of fiduciary duty. Counts 4-5 assert claims of fraud. Counts 6-7 allege fraudulent transfer claims. Counts 8-10 set out claims of conversion, unjust enrichment and negligence. Counts 11-13 apply to defendants who are not parties to these motions.[37] Finally, Count 14 seeks turnover of books and records under Bankruptcy Code § 524(e). The Movants allege that the Liquidation Trustee failed to state claims upon which relief can be granted pursuant to Rule 12(b)(6). The motions allege that the *Twombly/Iqbal* standard has not been met and that claims are not pled with sufficient particularity to the defendants. I disagree.

## DISCUSSION

The Movants contend that the Liquidation Trustee failed to state a claim for which relief can be granted. In a Rule 12(b)(6) motion, made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, "the court evaluates the merits of the claims by accepting all allegations

---

[32] Amended Complaint ¶ 57, 58.
[33] Amended Complaint ¶ 59.
[34] Amended Complaint ¶ 64, 65.
[35] Amended Complaint ¶ 68, 69.
[36] Amended Complaint ¶ 70.
[37] Defendants are Jonathan Reuben and Louis Bridges.

6

in the complaint as true, viewing them in the light most favorable to the plaintiffs, and determining whether they state a claim as a matter of law."[38] The burden is on the defendant to prove that no claim has been presented.[39]

A. The Court has Discretion Whether to Consider Outside Documents.

In support of the proposition that Liquidation Trustee failed to state a claim, the Movants submitted various documents and asked the court to consider the documents as a supplement to the pleadings. But to do so would convert the motions to dismiss into motions for summary judgment. "If on a motion under Rule 12(b)(6)…, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" and "all parties must be given a reasonable opportunity to present all material pertinent to that motion."[40] "To decide a motion to dismiss, courts generally consider only the allegations that are contained in the complaint, exhibits attached to the complaint and matters of public record."[41] The Amended Complaint did not attach any documents. The court is not required to give weight to supplemental information outside of the complaint. Rather than convert the motions to dismiss into motions for summary judgement, the court will not consider the extraneous information.

B. The Pleadings are Sufficient Under the Twombly and Iqbal Standards.

Under Fed. R. Civ. P. 8(a)(2), made applicable by Fed. R. Bankr. P. 7008, a pleading must contain "a short and plain statement showing that the pleader is entitled to some relief."[42] The pleading standard does not require detailed factual allegations; but it must be more than a

---

[38] *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).
[39] *Id.*
[40] *DeLuca v. AccessIT Group, Inc.*, 695 F.Supp.2d 54, 59 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 12(d)).
[41] *In re Stone & Webster, Inc.*, 2009 WL 426118, at *3 (Bankr. D. Del. Feb. 18, 2009) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).
[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (citing Fed. R. Civ. P. 8(a)(2)).

defendant-unlawfully-harmed-me accusation.[43] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must show that the grounds of his entitlement to relief amount to more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not suffice.[44] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.[46] Two principals underlie the *Twombly* standard. First, a court's acceptance of a complaint's allegations as true is inapplicable to legal conclusions, and threadbare recitals of cause of action elements, supported by conclusory statements, will not suffice.[47] Second, determining whether a complaint states a plausible cause of action requires the court to rely on its experience and common sense.[48] Simply stated, *Twombly* requires that a pleading nudge claims "across the line from conceivable to plausible."[49]

The Third Circuit follows a three-step process to determine the sufficiency of a complaint under *Twombly* and *Iqbal*:

> "First, the court must 'take note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"[50]

---

[43] *Id.*
[44] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).
[45] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 570).
[50] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

The movant bears the burden of showing that the dismissal is appropriate.[51]

(1) Breach of Fiduciary Duty

The Movants raised the issue of whether the Liquidating Trustee has standing to bring derivative claims on behalf of a limited liability company or limited partnership. The Court will deny the motions to dismiss counts 1-3 under Fed. R. Civ. P. 12(b)(6), but, because standing implicates subject matter jurisdiction, I will grant leave to allow the Movants to file motions under Fed. R. Civ. P. 12(b)(1), made applicable by Fed. R. Bankr. P. 7012(b), to address similar issues raised in decisions that were published post-briefing.[52]

(2) Fraud

Under Delaware law, a plaintiff must allege with particularity the following elements to state a claim for common law fraud: (i) a false representation of material fact; (ii) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (iii) the defendant's intent to induce the plaintiff to act or refrain from acting; (iv) the plaintiff's action (or inaction) taken in justifiable reliance upon the representation; and (v) damage to the plaintiff as a result of such reliance.[53] For claims of fraud, "a party must state with particularity the circumstances constituting fraud."[54] "To adequately allege fraudulent intent in the absence of direct evidence, a plaintiff may plead circumstantial evidence, or badges of fraud, that permit the inference of fraudulent intent."[55]

---

[51] *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D. Del. 2007).
[52] *See In re HH Liquidation, LLC*, 590 B.R. 211 (Bankr. D. Del. 2018); *PennySaver USA Publishing, LLC v. OpenGate Capital Group (In re PennySaver USA Publishing, LLC)*, 587 B.R. 445 (Bankr. D. Del. 2018).
[53] *Miller v. Greenwich Capital Fin. Prod., Inc. (In re Am. Bus. Fin. Servs. Inc.)*, 457 B.R. 314, 324-25 (Bankr. D. Del. 2012) (citing *Tillman v. Pepsi Bottling Grp., Inc.*, 538 F. Supp. 2d 754, 783 (D. Del. 2008)).
[54] Fed. R. Civ. P. 9(b).
[55] *In re Appleseed's Intermediate Holdings, LLC.*, 470 B.R. 289 (D. Del. 2013) (citing *Zazzali v. Swenson (In re DBSI, Inc.)*, 2011 WL 1810632, at *2 (Bankr. D. Del. May 5, 2011)).

Counts 4-5 sufficiently plead the elements for fraud. First, the Amended Complaint alleges that the Citadel Partners made false representations to the investors about how their monies would be used, and which entities owned particular assets. The Amended Complaint alleges falsifying, destroying, or failing to keep records, removal of records from business premises, and falsifying tax returns, among other things. Second, the Citadel Partners made these representations knowing they were false and intending that investors act (or refrain from acting) based on the false statements. The Amended Complaint also alleges that the Citadel Partners deliberately withheld information from investors about business operations. Finally, given the alleged fiduciary relationship, it was justifiable for the investors to rely on the Citadel Partners' representations. Finally, the Amended Complaint alleges that damage resulted from the fraud in amounts to be proven at trial.

The facts underlying the fraud claims in Counts 4-5 contain more than conclusory statements. Allegations about specific actions (and inactions) make it plausible for the Court to infer that fraud may have occurred. Further discovery into the allegations is appropriate. The Court takes the allegations as true and holds that the *Twombly/Iqbal* standard is met.

(3) Fraudulent Transfer

Count 6 alleges that the Movants fraudulently transferred assets with an intent to defraud the Debtors. Section 548 of the Bankruptcy Code covers two types of fraud: actual fraud under subsection (a)(1)(A), and constructive fraud under subsection (a)(1)(B).[56] The Fed. R. Civ. P. 9(b) heightened standard applies to actual fraud, while the sufficiency of a constructive fraudulent transfer claim should be evaluated under Fed. R. Civ. P. 8(a), which requires a "short plain

---

[56] *In re TSIC, Inc.*, 428 B.R. 103 (Bankr. D. Del. 2010).

statement of the claim showing that the pleader is entitled to relief."[57] To avoid a transaction under section 548(a)(1)(A), a movant must show that the transaction was made with intent to hinder, delay or defraud.[58] This is often done by examining badges of fraud, including (i) relationship between the debtor and the transferee; (ii) consideration for the conveyance; (iii) insolvency of the debtors; (iv) amount of the estate transferred; (v) reservation of control of the assets transferred; and (vi) concealment of the transfer.[59]

Taking all facts in the Amended Complaint as true, the Amended Complaint adequately states a fraudulent transfer claim under § 548(a)(1)(A). The Amended Complaint alleges that the Citadel Partners fraudulently transferred assets belonging to the Debtors with an intent to defraud the Debtors and its subsidiaries. The Amended Complaint also alleges that ND Water Partners fraudulently transferred assets belonging to the Debtors (including the Dahl Lease) with an intent to defraud. Given that transfer, Dahl filed a lawsuit to terminate the lease; and issues between parties carried over into the bankruptcy proceedings. The Amended Complaint alleges that the defendants' unauthorized assignment increased Dahl's leverage in the bankruptcy case and resulted in a sale of the Debtors' assets at a depressed value. The Amended Complaint satisfies the elements for fraudulent transfer under § 548(a)(1)(A) and sets the stage for a plausible cause of action.

Further, the Amended Complaint successfully states a constructive fraudulent transfer claim. Under § 548(a)(1)(B), any transfer for which a debtor received less than a reasonably equivalent value can be avoided if the debtor: (i) was insolvent on the date of the transfer or became

---

[57] *In re Centaur, LLC.*, 2013 WL 4479074, at *3 (Bankr. D. Del. Aug. 19, 2013) (citing *Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 495 (Bankr. D. Del. 2010)).
[58] *Official Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners, L.P. (In re Fedders North Am., Inc.)*, 405 B.R. 527, 545 (Bankr. D. Del. 2009).
[59] *Id.*

11

insolvent as a result of the transfer, and (ii) received less than reasonably equivalent value for the transfer.[60] The Amended Complaint alleges that one or more of the Citadel Partners pilfered the insurance proceeds from the tornado destruction, which resulted in a mechanics lien being filed against the property subject to the Dahl Lease. The Amended Complaint also alleges that a falling out between Dodson and Dunaway resulted in a transfer of assets, including the Dalh Lease, to an entity controlled by the C&S Defendants. The mechanics lien and transfers caused Dahl to file a notice of intent to evict the Debtors, followed by a lawsuit to terminate the Dahl Lease. The Amended Complaint alleges that the assets transfers contributed to the Debtors' insolvency, because the Debtors filed for bankruptcy shortly thereafter. The Amended Complaint adequately states a fraudulent transfer claim under § 548(a)(1)(B).

(4) Conversion

Conversion is the "wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it."[61] To establish a successful conversion claim, the Liquidation Trustee must establish that, at the time of the alleged conversion: (i) the estate held an interest in the property; (ii) it had a right to possession of the property; and (iii) the defendants converted the property.[62] The Amended Complaint alleges that on multiple occasions, the Debtors' property was converted for the personal use of another entity. It alleges that monies belonging to one entity were used to pay the expenses of another entity, or to pay partners personally. Further, the Amended Complaint alleges that investors provided monies to the Debtors, then the Movants converted those monies for the use of other entities or used the funds for other purposes without

---

[60] 11 U.S.C. § 548(a)(1)(B).
[61] *Acierno v. Preit-Rubin, Inc.*, 199 F.R.D. 157, 165 (D. Del. 2001) (citation omitted).
[62] *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996).

authorization. Count 8 of the Amended Complaint appropriately alleges the elements of conversion.

(5) Claims of Unjust Enrichment and Negligence

"Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[63] To establish a claim for unjust enrichment, a plaintiff must prove: "(i) an enrichment; (ii) an impoverishment; (iii) a relation between the enrichment and the impoverishment; (iv) the absence of justification; and (v) the absence of a remedy provided by law."[64] The Amended Complaint alleges many instances of the Citadel Partners commingling assets, converting investor monies for their own use, and using shell corporations to thwart knowledge of their fraudulent activity. The Amended Complaint presents plausible claims that the Citadel Partners received an enrichment directly related to the impoverishment of the Debtors, and thus the claim is satisfied under *Twombly/Iqbal* standards.

Negligence is defined as the act or failure to act that the actor, as a reasonable person, should recognize involves an unreasonable risk of harm to others, when the actor has a duty to refrain from taking the action or has a duty to act if the omission may result in harm.[65] Recovery in an action for negligence requires (i) proof of a duty, (ii) a breach of that duty, (iii) proximate causation, and (iv) damages.[66]

The Amended Complaint alleges that, at some time during the Debtors' operations, either the Citadel Partners or ND Water Partners installed themselves as managing partners or *de facto* managing partners of the Debtors, both expressly and/or by their conduct. This imposes a duty of

---

[63] *In re Conex Holdings, LLC.*, 518 B.R. 792, 806 (Bankr. D. Del. 2014) (citation omitted).
[64] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).
[65] Restatement Second of Torts § 284.
[66] *Matter of L.B. Trucking, Inc.*, 163 B.R. 709, 719 (Bankr. D. Del. 1994).

care to the Debtors. The Amended Complaint alleges that the Citadel Partners breached this duty by concealing actions from investors, failing to disclose material information to the Debtors, and engaging in self-dealing, among other things. These actions and inactions harmed the Debtors' investors and caused the Debtors' assets to be sold at a depressed value. Similarly, ND Water Partners owed a duty of care while acting as Citadel Watford's partners, which they breached when they illegally assigned the Dahl Lease to ND Water Partners, which, in turn, depressed the value of the Debtors' assets. The Amended Complaint sufficiently alleges facts indicating a plausible negligence claims against the Movants.

(6) Turnover

Section 542 requires an entity in possession of property of the estate to deliver that property, or value thereof, to the trustee.[67] "A properly pleaded complaint asserting a claim for turnover must allege an undisputed right to recover the claimed debt."[68] Turnover is not appropriate when there is a legitimate dispute over property ownership.[69] The Amended Complaint requests turnover of all books and records relating to the Debtors. Based on the Amended Complaint's allegations of falsifying or destroying records of the Debtors, the Trustee's turnover claim is valid and appropriate.

---

[67] *In re Conex Holdings, LLC.*, 518 B.R. at 801(citing 11 U.S.C. § 542(a)).
[68] *Id.* (citing *In re Hechinger Inv. Co. of Delaware, Inc.*, 282 B.R. 149, 162 (Bankr. D. Del. 2002)).
[69] *Id.* (citing *Giuliano v. Fairfield Health Care Centers Limited P'ship (In re Lexington Healthcare Grp., Inc.)*, 363 B.R. 713, 716 (Bankr. D. Del. 2007)).

## CONCLUSION

For the foregoing reasons, the motions to dismiss will be denied. However, the Movants will be granted leave to file motions under Fed. R. Civ. P. 12(b)(1) to seek dismissal of counts 1-3.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

DATED:  December 17, 2018